Diem T. Nguyen
PO Box #12139
Westminster, California, 92685
diem.home@gmail.com

Plaintiff in Propria Persona

2017 MAY 24 PM 1:18

Fee Paid
Filed

## UNITED STATES DISTRICT COURT,

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEM T. NGUYEN, | SACV17-00905 PSG (DFM) |
| Plaintiffs, | COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF |
| vs. | |
| KAISER FOUNDATION HEALTH PLAN, INC.;KAISER FOUNDATION HOSPITALS; THE PERMANENTE MEDICAL GROUP, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP;NORTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; | CLAIM 1.   VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C § 1983) <br><br> CLAIM 2.   INVASION OF PRIVACY <br><br> CLAIM 3.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| KELLY PHILIPSON; JOHANNA MARIE DUBYAK; ANN WILLIAMS; MOHAMMAD ASLAM;LORETA CASTULO; THIBERT, KIMBERLY LYN; ROBIN KILGORE; DIANN CHANG; YVONNE BARCZAK; | CLAIM 4.  BREACH OF CONTRACT <br><br> CLAIM 5.  BREACH OF FIDUCIARY DUTY <br><br> CLAIM 6.  NEGLIGENCE <br><br> CLAIM 7. ACTUAL FRAUD, INTENTIONAL DECEIT |

- 1 -
COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

COUNTY OF ORANGE; ORANGE COUNTY SOCIAL SERVICES AGENCY;

MARTIN GARCIA; LORETTA GONZALES; MAUREEN NAGANUMA; HUONG LE-TRANSQUE;  THEODORE PHAN; MICHAEL F. RYAN; TAMMY BECKNER-PAVONE; MARK A. BOYCE; MARK LOTTMAN; IRMA SALAZAR-ALLEN; CARRIE MURPHY; MAHONRI SAPIGA;

HUNTINGTON BEACH CITY SCHOOL DISTRICT; JOSEPH R. PERRY ELEMENTARY SCHOOL ;

RENEE POLK JOHNSON; JANETTE LYN DUNN; LAUREN RANDALL;

THEODORE R. GREENZANG;

HONG NGUYEN;

and DOES 1-10, Inclusive
                    Defendants.

CLAIM 8.  PROFESSIONAL NEGLIGENCE

CLAIM 9.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

CLAIM 10.  DECLARATORY RELIEF

CLAIM 11.   INJUNCTIVE RELIEF

DEMAND FOR JURY TRIAL

//

//

//

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

1.      PLAINTIFF DIEM T. NGUYEN (or "Mother" and/or "PLAINTIFF"), files this civil action for damages against defendants below and makes the following allegations:

## I. JURISDICTION

2.      Subject matter jurisdiction is proper in federal court because the legal issues arise under Title 28 U.S.C. § 1331; and as to supplemental jurisdiction over state law claims pursuant to Title 28 U.S.C. § 1367 as they are integrally interrelated with PLAINTIFF'S federal law claims.

## II. VENUE

3.      Venue is proper here pursuant to Title 28 U.S.C. § 1391(b)(1) because the actions and allegations all took place in the Central District, Southern Division.

## III. PARTIES

4.      PLAINTIFF is, and at all times material hereto was, an individual residing in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CA.

5.      KAISER ENTITIES defendants: KAISER FOUNDATION HEALTH PLAN, INC.;KAISER FOUNDATION HOSPITALS; THE PERMANENTE MEDICAL GROUP, INC.; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP and ;NORTHERN CALIFORNIA PERMANENTE MEDICAL GROUP do business in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CALIFORNIA. KAISER ENTITIES are vicariously responsible for the individual KAISER Defendants' conducts and behaviors, and DOES 1 through 10,inclusive. Individual KAISER Defendants was/are agents and/or employees of KAISER ENTITIES acting within the scope of their employment and/or with permission and consent.

6.      Plaintiff is informed and believes that the individual KAISER employee defendants: KELLY PHILIPSON (or " PHILIPSON"); JOHANNA MARIE DUBYAK (or " DUBYAK"); ANN WILLIAMS (or "WILLIAMS"); MOHAMMAD ASLAM (or " ASLAM";LORETA CASTULO (or " CASTULO"); THIBERT, KIMBERLY LYN ( or " THIBERT"); ROBIN KILGORE (or " KILGORE"); DIANN CHANG (or "CHANG"); and YVONNE BARCZAK (or " BARCZAK"), live and/or  work in the CENTRAL

DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CALIFORNIA. These individuals are sued individually, profession capacity, and under a theory as agents of the KAISER Entity Defendants under respondeat superior vicarious liability.

7. The COUNTY OF ORANGE and its SOCIAL SERVICES AGENCY(or "OC SSA") is a political subdivision of the STATE OF CALIFORNIA, doing business in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CA. COUNTY OF ORANGE and OC SSA are vicariously responsible for the conducts and behaviors of individual OC SSA Defendants, and DOES 1 through 10, inclusive, under California Government Code section §815.2, and other applicable statutory case law.

8. PLAINTIFF is informed and believes that the individual COUNTY OF ORANGE and OC SSA defendants ("Individual OC SSA Defendants"): MARTIN GARCIA ( or "GARCIA"); LORETTA GONZALES (or "GONZALES"); MAUREEN NAGANUMA (or "NAGANUMA"); HUONG LE-TRANSQUE (or "LE-TRANSQUE"); THEODORE PHAN (or "PHAN"); MICHAEL F. RYAN (or "RYAN") AS DIRECTOR; TAMMY BECKNER-PAVONE (or "BECKNER-PAVONE"); MARK A. BOYCE (or "BOYCE"); MARK LOTTMAN (or "LOTTMAN"); IRMA SALAZAR-ALLEN (or "SALAZAR-ALLEN"); CARRIE MURPHY (or "MURPHY"); MAHONRI SAPIGA (or "SAPIGA"), live and/or work in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CA. These individuals are sued individually and professional capacity.

9. Entity defendant HUNTINGTON BEACH CITY SCHOOL DISTRICT (or "HBCSD") was and is a public entity, JOSEPH R. PERRY ELEMENTARY SCHOOL (or "JOSEPH PERRY") is part of HBCSD, doing business in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE,CA. HBCSD and JOSEPH PERRY are vicariously responsible for RENEE POLK JOHNSON, JANETTE LYN DUNN, and LAUREN RANDALL's conducts and behaviors, and DOES 1 through 10, Inclusive, under California Government Code section §815.2, and other applicable statutory case law. POLK JOHNSON, RANDALL, and DUNN was/are agents and/or employees of HBCSD and JOSEPH PERRY acting within the scope of their employment and/or with

permission and consent.

10.    Plaintiff is informed and believes that the individual HBCSD and JOSEPH PERRY employees: RENEE POLK JOHNSON(or "POLK JOHNSON"); JANETTE LYN DUNN (or "DUNN"); LAUREN RANDALL (or "RANDALL"),  live and/or work in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CA.  These individuals are sued individually and professional capacity.

11.    THEODORE R. GREENZANG (or "GREENZANG") is a psychiatrist, lives and/or works in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CA..  This individual is sued individually, professional capacity .

12.     HONG NGUYEN was an ORANGE COUNTY PUBLIC DEFENDER, lives and/or works in the CENTRAL DISTRICT OF CALIFORNIA, in the COUNTY OF ORANGE, CA..  HONG NGUYEN is sued individually and professional capacity.

13.    The true names and capacities of these Defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained pursuant to Fed.R.Civ.P. 15 (c)(3).

## IV.FACTS COMMON TO ALL CAUSES OF ACTION/REMEDIES

*- Acts of Perjury, Fabrication of Evidence, Suppression of Known Exculpatory Evidence:*

14.    PLAINTIFF has three children, L.T.N and twins L.H.N and L.S.N..  On March 16, 2016, PLAINTIFF gave birth to twins via C-section surgery at KAISER, Irvine,CA. L.S.N. was admitted to NICU within two hours of delivery due to respiratory distress. L.T.N. was barely seven years old when removed from PLAINTIFF'S care and custody on Mar.18, 2016.  L.T.N. 's birthday is Dec. 25,2008.

### -COUNTY OF ORANGE, OC SSA, Individual OC SSA Defendants-

15.    PLAINTIFF is informed and believes, and upon such information and belief alleges that the juvenile proceedings can be summarized in four phases here: 1)investigation and warrant: PHAN, SALAZAR-ALLEN, LOTTMAN, MURPHY, and SPIGA; 2) detention

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

and petition: GARCIA and GONZALES; 3) jurisdiction and disposition trials: BOYD, NAGANUMA,and BECKNER-PAVONE and; 4) case plan: NAGANUMA, BECKNER-PAVONE, ANASCAVAGE, and BEHEN–GIVENS. LE-TRANSQUE and MICHAEL ESPINOZA were PLANTIFF'S visitation monitors. MICHAEL ESPINOZA is not a defendant.

16. PLAINTIFF is informed and believes, and upon such information and belief alleges:

a. on Mar.17, 2016,at approx. 7pm, PHAN coerced and persuaded KILGORE to print and surrender PLAINTIFF's KAISER records to PHAN without PLAINTIFF'S knowledge,consent, subpoena, warrant, and/or absent exigent circumstances by alleging, holding, and /or representing that PHAN is a judicial authority entitled to said records.

b. on Mar. 17,2016, at approx. 9pm, PHAN entered PLAINTIFF'S private bedroom #353 at KAISER unannounced without PLAINTIFF's consent, warrant, and/or absent exigent circumstances,witnessed PLAINTIFF being incapacitated and half naked on KAISER bed, refused to be recorded by PLAINTIFF, and demanded to examine and interview PLAINTIFF;

c. on Mar. 17,2016, PHAN interviewed and examined L.T.N. without PLAINTIFF'S knowledge, consent, subpoena, warrant, and/or absent exigent circumstances;

d. on Mar. 17,2016, PHAN coerced and persuaded PLAINTIFF'S sisters to enter and take images of PLAINTIFF's home without PLAINTIFF's knowledge, consent, warrant, and/or absent exigent circumstances for PHAN by alleging, holding, and /or representing that PHAN is a judicial authority entitled to said trespass,search, images, and/or examination. PHAN used his examination of these images of PLAINTIFF'S home in his application for warrant;

e. on Mar.18,2016, PHAN, SALAZAR-ALLEN, LOTTMAN, MURPHY, and SPIGA knew the existence of the observation by DR.WONG, FELICIA KUO, a KAISER psychiatrist dated Mar.18,2016 at approx 12:46 p.m.," In the absence of clear evidence of imminent danger to self or others due to primary psychiatric disorder...[PLAINTIFF] may

refuse the psychiatric evaluation and does not appear to meet criteria for 5150 psychiatric hold or involuntary psychiatric treatment at this time." Defendants withheld and disregard this exculpatory evidence, proceeded with the warrant application, the warrant order, removed PLAINTIFF'S Children, and then continued to withhold and/or disregard this exculpatory evidence in the Detention report, hearing, and/or matters concerning returning PLAINTIFF's children home;

f.      on Mar.18,2016 at approx. 6pm, PHAN served PLAINTIFF the warrant order and a one page pre-printed brochure containing only handwritten date of Mar. 23,2016 at 08:00am for Detention at Lamoreaux Court without specificity;

g.      on Mar. 18,2016, at approx. 6pm, OC SSA removed PLAINTIFF's children from her care and custody, and placed her twins in NICU pending further court hearing;

h.      On Mar. 23,2016, PLAINTIFF's children were placed into the care and custody of PLAINTIFF'S sibling, DIEM D. and her husband, Thinh  (or "caregivers/caretakers");

i.      on Mar. 23,2016, PHAN coerced and persuaded BENNETT to print and surrender PLAINTIFF's children KAISER records to PHAN without PLAINTIFF'S knowledge, consent, subpoena, warrant, and/or absent exigent circumstances by alleging, holding, and /or representing that PHAN is a judicial authority entitled to said records;

j.      on May 10,2016, OC SSA served PLAINTIFF REDACTED documents containing incomplete records above.

17.      PLAINTIFF is informed and believes, and upon such information and belief alleges that on Mar.17,2016, PHAN, SALAZAR-ALLEN, LOTTMAN, MURPHY, and SPIGA knew PLAINTIFF was incapacitated under KAISER's care and thus, allegations by KAISER professionals lack foundation and were patently invalid and false.

18.      PLAINTIFF is informed and believes, and upon such information and belief alleges that PHAN, SALAZAR-ALLEN, LOTTMAN, MURPHY, AND SPIGA  failed and refused to conduct proper investigations, assessment, and/or evaluation prior to securing the said warrant order, and withheld exculpatory evidences.  PHAN failed and refused to state and provide with specificity concerning his investigations and/or reports.

PHAN's investigations contained "as per hospital's staffs and/or medical professionals" allegations without foundations and/or specificity. PHAN failed and refused to specify the time PHAN examined L.T.N., how/who/etc. PHAN knew where L.T.N.'s temporary residence while PLAINTIFF was incapacitated at KAISER. PHAN failed to state with specificity concerning the images of PLAINTIFF's home.

19.    PLAINTIFF is informed and believes, and upon such information and belief alleges that SALAZAR-ALLEN, LOTTMAN, MURPHY, AND SPIGA on its own accord knew, participated, consent, advise, and/or facilitated PHAN'S activities alleged above ¶15-19;

20.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Mar. 23, 2016 the Detention Hearing, PLAINTIFF was served with the copies of Detention Report and Original Petition dated Mar. 22,2016.

21.    PLAINTIFF is informed and believes, and upon such information and belief alleges that individual OC SSA Defendants failed and refused to inform PLAINTIFF of her right to neutral third party location and monitor for her visits with her children to be serviced by COUNTY OF ORANGE and OC SSA upon removing PLAINTIFF's children.

22.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Mar. 25,2016 at the Lamoreaux Court:

a.    the court granted ALL COUNTY of ORANGE and OC SSA Defendants unquestionable authorities to liberalize PLAINTIFF'S visitations with her children;

b.    the court's orders concerning PLAINTIFF'S visitations with her children were based solely upon individual OC SSA Defendants' suggestions and/or recommendations, etc.;

c.    GARCIA testified that GARCIA authored the Detention Report and Petition dated Mar. 22,2016, cut and paste and edited contents conducted by PHAN without the need of additional investigations. GARCIA had no substantial foundations concerning any and all allegations. Yet, GARCIA testified under penalty of perjury that PLAINTIFF'S children may suffer physical harm and at risk if return to PLAINTIFF'S care and custody.

23.    PLAINTIFF is informed and believes, and upon such information and belief alleges that individual OC SSA Defendants deliberately failed and refused at any point in time to

make, assess, evaluate, and/or provide less drastic measure and recommendation than restricted PLAINTIFF under the hostile environments of her siblings and related parties, to provide alternatives than drastically separating and removing PLAINTIFF's children from her care and custody, and/or to offer services that would promote from and/or prevent removing and separating PLAINTIFF and her children, and similarly, pending all matters at Lamoreaux Court. On Mar. 25,2016, PLAINTIFF's public defenders entered and took images of PLAINTIFF's home substantiating the facts that PLAINTIFF's home was and is more than adequate for her children. Individual OC SSA Defendants maliciously failed and refused to allow PLAINTIFF's children return home.

24. PLAINTIFF is informed and believes, and upon such information and belief alleges that GARCIA and GONZALES authored the Petition dated Mar.22,2016 claiming PLAINTIFF in violation of WIC§300(b) and WIC§300(j) regardless of whether or not reasonable and articulable evidence exists at the time to support the claims under penalty of perjury. Defendants failed and refused to conduct any investigations, and had no foundations. The warrant order was on Mar. 18,2016 and Defendants were afford more than sufficient time to conduct proper investigations, assessment, and/or evaluation.

25. PLAINTIFF is informed and believes, and upon such information and belief alleges that pursuant to the interview report conducted by Senior Social Worker JULIE T. NGUYEN on Apr. 01,2016 of the caregiver and L.T.N.,"[the caregiver] pointed it out that she and the [PLAINTIFF] do not have the same ideas in parenting. She commented that... [L.T.N.] tends to shy and hide from people, but he would not take too long to warm up to them. However, the caretaker believes that the [LT.N.] needs to work on his social skills...She commented that the [L.T.N.] is a very picky eater; although the child eats three meals a day,he would not eat fruits but like to eat tofu, rice, macraoni and cheese, pizza, and Korean BBQ...[JULIE T. NGUYEN] again attempted to engage with...[L.T.N.]... [L.T.N.] eventually answered some of the [JULIE T. NGUYEN's] questions, especially when they are pertained to the game Minecraft that the [L.T.N.] was playing at the time... [L.T.N.] responded in short and simple sentences and they are primarily in English."

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

26.     PLAINTIFF is informed and believes, and upon such information and belief alleges that Individual OC SSA Defendants specifically NAGANUMA and BECKNER-PAVONE suggested and/or recommended the Lamoreaux Court to take away PLAINTIFF's education rights concerning L.T.N. and vested to the caregivers on Apr. 18,2016.  By said actions, Defendants, and each of them further empowered and influenced PLAINTIFF's siblings to continue fabricating additional false allegations of PLAINTIFF to maintain the removal and separation of PLAINTIF and her children.

27.     PLAINTIFF is informed and believes, and upon such information and belief alleges that upon learning of her rights to secure neutral third party monitor and location for her visitation to be serviced by COUNTY of ORANGE and OC SSA, on May 11,2016, PLAINTIFF contacted NAGANUMA and BECKNER-PAVONE seeking for said services to no avail.  Defendants refused to provide said services. PLAINTIFF and her siblings do not live under the same roof and yet, Defendants maliciously subjected PLAINTIFF to be under the same roof with her siblings during visitations with her children.  Defendants subjected PLAINTIFF to be monitored by her siblings for over seven months. Defendants empowered and influenced said siblings how to effectively fabricate additional false allegations to maintain the separation of PLAINTIFF and her children by instructing said siblings' to make all reports of PLAINTIFF to Defendants. While simultaneously, Defendants used the same siblings to be its collateral and testified against PLAINTIFF.  PLAINTIFF did not gain proper access to her newborns, in a conducive environment, which  would facilitate the continued production of breast milk. Although PLAINTIFF continued to pump breast milk at home, the production of breastmilk decreased and eventually stop within two months after Defendants removed PLAINTIFF'S children from her care and custody.  A major contributory factor in the reduction and elimination of breastmilk production was PLAINTIFF being subjected to harassment, hostile,and/or controlled environments  at and by PLAINTIFF'S siblings consent, coordinated, and/or facilitated by and through Defendants.

28.     PLAINTIFF is informed and believes, and upon such information and belief alleges

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

NAGANUMA and BECKNER-PAVONE subjected PLAINTIFF'S visitations to be monitored by her hostile siblings at their place of residence from Mar. 23, 2016 through Sept. 22, 2016. Defendants' Addendum Reports #1-8 and all reports produced during these time frames contained countless baseless false allegations of PLAINTIFF by her siblings to make it appear as if PLAINTIFF is an unfit parent. PLAINTIFF'S siblings and related parties whisper and poison L.T.N.'s mind of PLAINTIFF being an unfit parent invoking, provoking, and influencing L.T.N. to act out against PLAINTIFF during visitations. Said acts continued to date. PLAINTIFF' siblings attempted to erase L.T.N.'s memory and images of PLAINTIFF'S life with L.T.N.. L.T.N. was forbidden to speak Vietnamese. The only language exist in the caregivers' house is English. L.T.N. was to call the caregivers mom and dad. NAGANUMA and BECKNER-PAVONE knew of these facts, failed to take actions, and withheld these exculpatory evidences in reports. As per Addendum Report #2,"...[NAGANUMA, AND BECKNER-PAVONE] asked the children's caretaker about the mother's ability to care for the children. The caretaker state that for the two hours the mother is visiting, the mother can care for the children...'but there is no way [PLAINTIFF] can take care of them by herself full time."

29.    PLAINTIFF is informed and believes, and upon such information and belief alleges that BOYCE, NAGANUMA, and BECKNER-PAVONE took turn lending each other name in authoring the Addendum Reports and all reports from Mar. 2016 through Mar. 2017. Defendants deliberately engineered manipulated the said reports to contain half truths to make it appear as if PLAINTIFF possess mental illness and an unfit parent. Defendants demanded PLAINTIFF to share and utilizing this precious time interact with other parents who were at OC SSA to be with their children as otherwise, Defendants consistently alleged, assessed, and/or evaluated PLAINTIFF's mental state of being paranoid and socially isolated. As per Addendum Report #11, "Throughout this case, the mother has presented as paranoid, delusional, agitated, exhibiting explosive conduct, and insisting on engaging in social isolation during her visitation with her children...The mother appears patient and loving during the visits, for the most part. She is observed

feeding her babies, changing them and playing with them. The mother attempts to interact with [L.T.N.] and seems very focused, and at times preoccupied, and with teaching him Vietnamese and drawing during their visits. The mother seldom plays with the child, and appears to frustrate him. The mother is not very physically affectionate with the child during the visits, but does encourage him to spend time with her talking..."

30.    PLAINTIFF is informed and believes, and upon such information and belief alleges that starting with Sept. 22,2016, OC SSA finally provided PLAINTIFF visitation services. NAGANUMA and BECKNER-PAVONE continued to fail and refuse to secure PLAINTIFF neutral third party monitors. PLAINTIFF was monitored by OC SSA employees. Addendum Reports # 9-13 and all reports during these time frames contained additional countless false allegations, assessment, and evaluations of PLAINTIFF. Defendants scheduled visitations based upon the caregiver's conveniences, pleasures, schedules, etc. as opposed to take every reasonable possible steps in its authority to ensure the continuity of natural bonding and relationship between PLAINTIFF and Children. Defendants tolerated, consent, and/or facilitated the caregivers' deliberate constant disruption and interruption of PLAINTIFF'S visitations with her Children. NAGANUMA forced PLAINTIFF to spend THANKSGIVING in 2016 with her siblings to no avail, and as a result forced PLAINTIFF to loose valuable visitations with her children during THANKSGIVING. PLAINTIFF lost precious hours with her Children due to no fault of her own. Defendants dictated the number of hours and frequency PLAINTIFF is entitled to speak and teach L.T.N. Vietnamese during visitation hours, and undermined and questioned PLAINTIFF's activities with her children.

32.    PLAINTIFF is informed and believes, and upon such information and belief alleges that from Sept. 22, 2016 to Mar. 02, 2017, negative reports concerning visitations came from LE-TRANSQUE. PLAINTIFF was unable to locate one "negative" report from MICHAEL ESPINOZA. LE-TRANSQUE was a constant frustration, disruption, provocation, and harassment. LE-TRANSQUE deliberately failed and refused to make accurate reports as otherwise, the reports would have alleged that LE-TRANSQUE,

NAGANUMA, and the caregivers and related parties have been whispering and poisoning L.T.N.'s mind of PLAINTIFF as an unfit parent invoking and provoking unpleasant visits. LE-TRANSQUE was constantly deliberately questioning and undermining PLAINTIFF'S activities with L.T.N in front of L.T.N. and suggesting L.T.N. similarly.  PLAINTIFF reported her concerns to NAGANUMA and BECKNER-PAVONE to no avail but only fueled additional negative reports of PLAINTIFF.  LE-TRANSQUE reported to OC SSA that LE-TRANSQUE was fearful of being with PLAINTIFF alone and yet, LE-TRANSQUE continued to monitor PLAINTIFF'S visitation.  On Sept. 23, 2016, per LE-TRANSQUE's report,"At this moment it was about 5:50pm, [L.T.N.] wants to play cards with [PLAINTIFF.]  [PLAINTIFF] told [L.T.N.] to sit still for half an hour '... [PLAINTIFF] play with you at 6:30pm. [L.T.N.] said '6:29 OK..?'. LE-TRANSQUE] remind [PLAINTIFF] that for a child of [L.T.N.]'s age to sit still quietly for half an hour it could be too hard. " On Sept. 29,2016, as per LE-TRANSQUE's report, "[L.T.N.] wanted [PLAINTIFF] to help him practice spelling words, [PLAINTIFF] told [L.T.N.] 'later'. [PLAINTIFF] wants [L.T.N.] to read Vietnamese. [LE-TRANSQUE] suggested to [PLAINTIFF] that both homework and Vietnamese are important...[L.T.N.] loves you. [L.T.N.] chooses to want to do homework with you. You should be please. [LE-TRANSQUE] encouraged [PLAINTIFF] to read the Vietnamese after doing words spelling with [L.T.N.].  [PLAINTIFF] did not say anything to [LE-TRANSQUE.] [L.T.N.] said to [PLAINTIFF] 'Yeah mom, you listen to what [LE-TRANSQUE] said.  Do what [LE-TRANSQUE] said'. "

33.     PLAINTIFF is informed and believes, and upon such information and belief alleges that LE-TRANSQUE developed personal and physical rapport with L.T.N outside of visitation hours.  L.T.N would hug LE-TRANSQUE, sit on her lap, lie down on her thighs to take naps, rests, etc. that L.T.N. would not do with other monitors. LE-TRANSQUE failed and refused to refrain from being constantly physically and/or verbally interactive and hands-on with PLAINTIFF's children during visitations unprovoked.

34.     PLAINTIFF is informed and believes, and upon such information and belief alleges

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

that in furtherance of maintaining the separation between PLAINTIFF and her Children, individual OC SSA Defendants and specifically NAGANUMA and BECKNER-PAVONE acted in concert and/or individually methodically, manipulatively chose and extracted incomplete inaccurate reports manufactured by individual OC SSA Defendants, documents, and/or records ("RECORDS") in its possession that would appear to portray PLAINTIFF possessing mental illness, an unfit parent, and presented said RECORDS to Individual JOSEPH PERRY Defendants persuaded, influenced, manipulated, and/or coerced said parties to produce the false IEP, recommendations, and testify similarly for the sole purpose of inducing and/or deceiving the Lamoreaux Court to take jurisdiction on Aug. 23,2016. Defendants knew at all relevant times that the RECORDS were incomplete, inaccurate, and/or lack foundations, facts, and/or evidences.

35.     PLAINTIFF is informed and believes, and upon such information and belief alleges that in furtherance of maintaining the separation between PLAINTIFF and her Children, individual OC SSA Defendants and specifically NAGANUMA and BECKNER-PVAONE acted in concert and/or individually methodically, manipulatively chose and extracted incomplete inaccurate reports manufactured by individual OC SSA Defendants, documents, and/or records ("RECORDS") in its possession that would appear to portray PLAINTIFF possessing mental illness, an unfit parent, and presented said RECORDS to GREENZANG persuaded, influenced, manipulated, and/or coerced GREENZANG to produce the false 730 Psy Report of PLAINTIFF for the purpose of inducing and/or deceiving the Lamoreaux Court to declare dependency on Jan. 06,2017,and to fabricate the false CASE PLAN. Defendants knew at all relevant times that the RECORDS were incomplete, inaccurate, and/or lack foundations, facts, and/or evidences. .

36.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 04,2017,NAGANUMA knew that Defendant falsely testified that all reports submitted to the Lamoreaux Court were accurate and complete.

37.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan.10,2017, the CASE PLAN was manipulatively engineered and set to fail, to

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

frustrate PLAINTIFF,to never intended for PLAINTIFF to be reunified with her Children legally and permanently without perpetual interferences by OC SSA and related parties, and to ensure PLAINTIFF'S siblings secure smooth adoption of her Children. Addendum Report #13 contained report that PLAINTIFF's public defender, HONG NGUYEN advised PLAINTIFF'S siblings to consider adopting her Children. GREENZANG reported that PLAINTIFF'S siblings expressed interests and desires to adopt her children, and further alleged there existed conflicts of interests among her siblings as to who should be entitled to adopt PLAINTIFF'S children.

38. PLAINTIFF is informed and believes, and upon such information and belief alleges that the COUNTY of ORANGE and OC SSA defined parties in its CASE PLAN and dependency proceedings:1) INDIVIDUAL being PLAINTIFF; 2) CONJOINT being PLAINTIFF's children and/or interests; 3) FAMILY being PLAINTIFF's siblings, parents, relatives,etc. and; 4) GROUP THERAPY being strangers and general public at large.

39. PLAINTIFF is informed and believes, and upon such information and belief alleges that Individual OC SSA Defendants have been holding PLAINTIFF's children hostage and alleged PLAINTIFF of child abuse and neglect in disguise as punishment and/or retaliation because Defendants do not like PLAINTIFF alleged as being disrespectful and/or ungrateful to family and general public included Defendants and KAISER professionals, being in disagreement with her family ideas of placing L.T.N. in school as opposed to homeschool, types of activities L.T.N. should participate, etc. all of which Defendants knew do not have any contact with child abuse and neglect and/or the juvenile dependency court. Defendants, and each of them was determined to condition, mold, intimidate,and/or dictate how PLAINTIIFF should interact and present herself as a person towards her family and general public all of which have nothing to do with the child abuse and neglect violated the letter, spirit, and/or intent of the WIC codes and abused the dependency process. As per CASE PLAN, PLAINTIFF to "treat others with respect, develop positive support system with friends and family, participate in general counseling with family and group therapy, keep all medical and dental appointments,etc.."

40.     PLAINTIFF is informed and believes, and upon such information and belief alleges that ANASCAVAGE and BEHEN - GIVENS authored reports starting March 31,2017 and continue to date of which contained additional false allegation, assessment, and/or evaluation of PLAINTIFF's mental illness and unfit parent.

41.     Each of the individual Defendants on its own accord participated in causing inflicting irreparable harm and injuries upon PLAINTIFF of which continue to this date. Defendants placed no concern as to the detriment.

42.     On Feb. 21,2017 and Feb. 23,2017, PLAINTIFF properly, timely, and/or substantially in compliance with serving ALL COUNTY OF ORANGE and OC SSA Defendants the notice of claim for damages and intent to seek legal action.   On Mar. 22,2017, PLAINTIFF spoke with MR. CALVIN WONG from the COUNTY of ORANGE who informed PLAINTIFF that he will resend the denial letter dated March 01,2017 as PLAINTIFF did not receive it. As per denial letter dated March 01,2017, "The claim you presented...is being returned because it was not presented within six (6) months after the accrual of the cause of action...no action was taken on the claim..." On April 07, 2017, PLAINTIFF properly, timely, and/or substantially in compliance with serving ALL COUNTY of ORANGE and  OC SSA Defendants leave to file late application for said claims.  On Apr. 25,2017, as per COUNTY of ORANGE's letter," Notice is hereby given that the application for leave to present a late claim against the County of Orange presented on April 7,2017 is denied...Notice is also hereby given the County of Orange reserves the right to dispute the timeliness of any of the issues presented in the claim should this matter proceed to litigation." On Apr. 25,2017, The COUNTY of ORANGE did not deny PLAINTIFF's claims nor the late application being late.

### -KAISER and Individual KAISER Defendants-

43.     PLAINTIFF is informed and believes, and upon such information and belief alleges that immediately after PLAINTIFF'S surgery at approx. 4:00 p.m. on Mar. 16, 2016, PLAINTIFF encountered an altercation with her sister DENISE who wanted to take L.T.N to her home.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

44.     PLAINTIFF is informed and believes, and upon such information and belief alleges that,on Mar.16,2016, DENISE made false defamatory derogatory comments about PLAINTIFF to KAISER providers included DUBYAK and KILGORE outside of her KAISER bedroom#353 immediately after the altercations with PLAINTIFF.

45.     PLAINTIFF is informed and believes, and upon such information and belief alleges that DUBYAK and KILGORE failed and refused to discuss and disclose DENISE's allegations to PLAINTIFF but instead recorded the conversations and examinations of DENISE in PLAINTIFF's KAISER records, and then began their own personal campaign and propaganda from within KAISER and with various individual KAISER providers to assist Defendants remove PLAINTIFF's children from her care and custody by fabricating false allegations of PLAINTIIFF abuse and neglect her children.

46.     PLAINTIFF is informed and believes, and upon such information and belief alleges that individual KAISER Defendants and providers colluded and collaborated in harassing, tormenting, and creating hostile environments for PLAINTIFF, and then falsely alleged PLAINTIFF of child abuse and neglect to PHAN from OC SSA:

a.     on Mar.16,2016 at approx. 6pm, LESLIE HOWARD demanded and ordered PLAINTIFF to appoint a person not a KAISER provider to be presence in bedroom#353 to care for  PLAINTIFF and L.H.N.'s needs during PLAINTIFF's stay at KAISER;

b.     On Mar. 16,2016 at approx. 7:15pm, KILGORE and DUBYAK contacted OC SSA falsely alleged PLAINTIFF abuse and neglect her children;

c.     on Mar.17, 2016 at approx. 2p.m.,KILGORE entered bedroom #353 unannounced, demanded to interrogate and interview PLAINTIFF, and threatened that KILGORE and KAISER providers can create and cause an adverse effect concerning the relationship between PLAINTIFF and her children;

d.     on Mar.17,2016 at approx. 9:30pm, DUBYAK threatened PLAINTIFF to talk to DUBYAK and PHAN as otherwise, DUBYAK will get her way;

e.     On Mar.17,2016, individual KAISER Defendants congregated at KAISER, Irvine,CA to collude, collaborate, and meet with and make false allegations against

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

PLAINTIFF to PHAN from OC SSA. PHILIPSON alleged that the PLAINTIFF does not have a known mental health diagnosis but there is a family history of mental illness and PLAINTIFF exhibits signs of a mental health condition. PHILIPSON alleged that PLAINTIFF was observed to ignore L.H.N. when L.H.N. was crying and did not take any measure to address the child's discomfort. DUBYAK alleged that the PLAINTIF does not have a mental health diagnosis but believes there may be underlying mental health issues due to her behavior. DUBYAK alleged that PLAINTIFF was observed to not follow feeding schedules for L.H.N., and was under feeding L.H.N. by 50 percent and if the poor feeding were to continue, L.H.N. could suffer from hypoglycemia, dehydration, and malnourishment. DUBYAK alleged that the dehydration is a major concern for newborns because they do not have enough reserves in their bodies. WILLIAMS alleged that PLAINTIFF was observed to ignore L.H.N. when she was crying and did not make any measure to address the child' discomfort. WILLIAMS observed L.H.N. woke up and cried, on four separate occasions, while in the room with the PLAINTIFF who had a "totally blank expression in her eyes", did not look at the baby or show any interest in the baby. The baby eventually fell back to sleep. CHANG alleged that if PLAINTIFF misses hunger cues once the baby goes home, the baby will be in immediate danger of dehydration and low blood sugar. ASLAM alleged that newborns need to be fed every 3-4 hours. ASLAM alleged that only breast pumping one time over a period of 24 hours is abnormal. ASLAM alleged that a newborn needs to be fed at least 8 times per day. ASLAM alleged that feeding a newborn only 4 times per day would lead to hypoglycemia, dehydration, malnourishment, and electrolyte abnormalities which would be detrimental to children' health ;

f.       On Mar.18,2016 at approx. 5:00p.m.,PHAN, PHILIPSON, WILLIAMS, two Irvine Police Officers entered PLAINTIFF'S bedroom #353. PHAN served PLAINTIFF the warrant order. PHILIPSON removed L.H.N. from PLAINTIF'S arm. PHILIPSON alleged that PLAINTIFF handed L.H.N. to PHILIPSON like L.H.N. was a sack and there were no tears, no emotion;

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

g.    On Mar. 19,2016 at approx. 10am, KAISER discharged PLAINTIFF;

h.    On Mar. 20,2016 at approx 6:54p.m., PLAINTIFF visited her twins at NICU. PLAINTIFF made no contact with KAISER nurse BUMAGAL, SONIA RUTH and yet, alleged,"'...[PLAINTIFF] held and cuddled with baby...showing flat affect...'";

i.    On Mar. 22,2016, THIBERT alleged PLAINTIFF was violent, stormed into the maternity ward without authorization, and entered the NICU without permission demanded to see her children.

j.    On June 03,2016, KAISER surrendered the "completed" medical records of PLAINTIFF to the Lamoreaux Court upon subpoena of which contained countless baseless false defamatory derogatory comments, remarks,diagnostic, assessment, and/or evaluation of PLAINTIFF's mental illness issues and unfit parent by individual KAISER Defendants and various KAISER providers. PLAINTIFF did not meet most of these KAISER providers.  PLAINTIFF do not recall the encounters and/or said incidents all of which conveniently surfaced starting with the date of March 16,2016.

47.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Mar. 17,2016, BARCZAK maliciously edited PLAINTIFF's KAISER record dated March 11,2016,"'revision history' 'Discussed with [PLAINTIFF] her aftercare post c/s with twins. Pt was angry with questions, stated she "doesn't need help, doesn't want anyone in her house, she managed fine with her son on her own. Expressed my concern and listened to hers, asked her to accept her sisters help, she dismissed my suggestions, refused to discuss further.'"

48.    PLAINTIFF is informed and believes, and upon such information and belief alleges that individual KAISER Defendants deliberately failed and refused to keep and maintain and/or ensure the maintenance of accurate complete perinatal breastfeeding, lactation, logs, records, and feeding schedules of PLAINTIFF and L.H.N during their stay in KAISER starting with Mar. 16,2016, and then falsely alleged PLAINTIFF of underfeeding, starving, and malnourishing L.H.N.

49.    PLAINITFF is informed and believes, and upon such information and belief alleges

that L.S.N.'s weight drastically fluctuated up and down during her entire time at NICU under KAISER's care.

50.    PLAINTIFF is informed and believes, and upon such information and belief alleges that PLAINTIFF was severed from her newborns on Mar. 18,2016, did not have full access to her twins to stimulate the breast milk production due to individual KAISER Defendants' false allegations and thus, the milk production steadily decreased and eventually stopped within two-months. Defendants caused and deprived PLAINTIFF of her needs, desire, and/or necessity to properly gain access to her newborns to stimulate breastmilk production, and feed her newborns with said breastmilk ;

51.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on June 07, 2016 at approx. 1:55pm, DUBYAK testified at Lamoreaux Court. DUBYAK testified that DUBYAK requested social worker postpartum and psychiatrist evaluations because PLAINTIFF is single with three children.  DUBYAK has no standing, credentials, and/or qualification to diagnose, assess, and/or evaluate PLAINTIFF's mental illness and unfit parent.

52.    PLAINTIFF is informed and believes, and upon such information and belief alleges that individual KAISER Defendants knew that Defendants' testimonies to PHAN from OC SSA, matters, and false diagnostic, assessment, and evaluation recorded in PLAINTIFF'S KAISER records would be utilized by OC SSA to submit to and relied upon by the Lamoreaux Court under penalty of perjury and yet, Defendants placed no concern as to the detriment.

53.    On February 10,2017, PLAINTIFF properly, timely, and/or substantially in compliance with serving ALL KAISER Defendants the notice of claim for damages and intent to seek legal action. ALL KAISER Defendants failed and refused to respond.

**-HBCSD, JOSEPH PERRY, POLK JOHNSON, RANDALL, DUNN-**

54.    PLAINTIFF is informed and believes, and upon such information and belief alleges that Individual OC SSA Defendants specifically NAGANUMA and BECKNER-PAVONE  authorized L.T.N. to be placed at JOSEPH PERRY to be evaluated and

assessed through and/or by the services commonly known and/or used, the West Orange County SELPA INDIVIDUALIZED EDUCATION PROGRAM (or "IEP").

55.    PLAINTIFF is informed and believes, and upon such information and belief alleges that POLK JOHNSON, RANDALL, and DUNN knew the importance of the assessment and evaluation of L.T.N. in that it would ultimately determine whether to maintain the removal and separation of PLAINTIFF'S children from her care and custody and PLAINTIFF'S parental rights to her children.

56.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on June 13, 2016,DUNN testified at the Lamoreaux Court. DUNN is part of the IEP team, the head facilitator; RANDALL, speech pathologist; and POLK JOHNSON, the principal. DUNN spent approx. six hours with L.T.N. DUNN sees L.T.N. on Tuesdays. DUNN testified that L.T.N. called the caregivers, mom and dad.  IEP contained full assessment and evaluation of L.T.N.'s included cognitive abilities, any speech issues regard to articulation, language processing, pragmatics, and whether or not these things are due to a learning disability, any other disability, and/or some other reason.  One of DUNN's purposes is to determine whether or not  L.T.N. qualifies for special services under the law.  DUNN does not  have regular contact with children who are homeschooled.  DUNN assessed and evaluated approx. three or four homeschooled students who became first graders in her entire lifetime career. DUNN is not familiar with the social skills of an average seven-year-old who is homeschooled.  There existed a range of socialization in the  population of seven year old.  DUNN is not qualified to diagnose L.T.N. with a generalized anxiety disorder.  DUNN has no data from PLAINTIFF regarding  L.T.N.. DUNN assessed and evaluated on average 60 IEP per year for first through third grade students. DUNN failed and refused to specify L.T.N.'s social isolation continuum.

57.    PLAINTIFF is informed and believes, and upon such information and belief alleges that upon the Lamoreaux Court's itself direct examination of DUNN seeking DUNN to provide the court L.T.N.'s social isolation continuum on the scale of one being

very little isolation and 10 being totally isolated, DUNN failed and refused to answer. Had DUNN answer when asked, DUNN would have admitted that the isolation and social issues alleged were patently inaccurate, invalid, and/or false. As the result, the IEP is equally patently inaccurate, invalid, and/or false.

58.    PLAINTIFF is informed and believes, and upon such information and belief alleges that DUNN was tossing words describing L.T.N. possessing anxiety and social isolation disorders inducing and/or deceiving the Lamoreaux Court the validity of IEP. DUNN is not qualified to make said clinical assessment and evaluation.

59.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on June 21, 2016, Defendants, and each of them, produced a false, inaccurate, incomplete, and fraudulent IEP of PLAINTIFF and L.T.N:"...[L.T.N.] does have behaviors that impact his academic and social/emotional functioning...these behaviors are likely attributed to the lack of exposure to a classroom, lack of exposure to peers/adults, exposure to [PLAINTIFF'S] mental health issues and [PLAINTIFF'S] inability to care for [L.T.N.]."

60.    PLAINTIFF is informed and believes, and upon such information and belief alleges that POLK JOHNNSON, RANDALL, and DUNN have never met and spoke with PLAINTIFF in person. IEP referenced PLAINTIFF'S KAISER records but not L.T.N..

61.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Aug.17, 2016, RANDAL testified at the Lamoreaux Court. RANDALL serviced approx 30 to 40 students per year at JOSEPH PERRY at one time. L.T.N. scored in the average range for a child of his grade level for reading and writing. There existed a significant gap between L.T.N.'s academic scores and his language scores of which is indicative that there is some portion of it is not environmental or a possibility for that. It's very hard to determine with language development what is being caused by the environment and by factors within the child in terms of family history, etc.. L.T.N. 's speech deficits would not likely pick up, improve, and repair from just being in a classroom setting. L.T.N.'s teachers alleged that L.T.N. was more verbal as time went on as opposed to when L.T.N. first started, L.T.N. was quiet and unwilling to talk to people. It

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

was difficult to determine whether L.T.N. was shy and/or unfamiliar with school environment, and it was unlikely that exposure to school in short period of time would have improved L.T.N.'s speech.

62.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Aug.18, 2016, DUNN was called for re-examination at Lamoreaux Court. IEP considered  L.T.N. never had any socialization and yet, DUNN admitted that the act of going to the playground and playing with other children, playing with cousins, having contact with grandparents, having contact with relatives, having contact with teachers who are teaching classes outside of the home, etc. are all  constituted socialization.  DUNN relied upon an assessment tool in short named, BAST 2 second edition as the behavioral assessment scale for children. BAST 2 is a tool of which is questionnaires given to parents or caretaker and teachers. BAST 2 still has error rates and has to be used within the guidelines and interpreted within the guidelines.  BAST 2 required that the person answer the questionnaires must have contact with L.T.N. at least two months in order for the said observations to be useful or clinically significant.  DUNN gave the BAST 2 to L.T.N.'s teachers and the caretakers.  DUNN knew that L.T.N.'s teachers came into contact with L.T.N. in less than one month, not every day,and yet, DUNN continued to score and incorporate said results into the IEP. DUNN alleged that BAST 2's scores were likely invalid.  DUNN observed L.T.N. hoarded foods during lunch time as if L.T.N. has never seen foods in his entire life.

63.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Aug. 18,2016, DUNN alleged PLAINTIFF starved and malnourished L.T.N..

64.     PLAINTIFF is informed and believes, and upon such information and belief alleges that Defendants, and each of them did not give PLAINTIFF the BAST 2 questionnaires to complete for the purposes of the IEP.

65.     PLAINTIFF is informed and believes, and upon such information and belief alleges that all HBCSD and JOSEPH PERRY Defendants knew that PLAINTIFF's children are not living with PLAINTIFF.

66.     PLAINTIFF is informed and believes, and upon such information and belief alleges that all HBCSD and JOSEPH PERRY Defendants recommended to the Lamoreaux Court to continue the removal and separation of PLAINTIFF'S children from her care and custody up to at least until June 21, 2017 and place L.T.N. at JOSEPH PERRY.

67.     PLAINTIFF is informed and believes, and upon such information and belief alleges that all HBCSD and JOSEPH PERRY Defendants failed and refused to recommend any psychiatric, therapy, and/or counseling services for L.T.N. by and/or under the law.

68.     PLAINTIFF is informed and believes, and upon such information and belief alleges that Defendants, and each of them failed and refused to recommend L.T.N. participate in any form of entity,organization, and/or services outside of JOSEPH PERRY concerning L.T.N.'s speech related issues and/or social isolation issues by and/or under the law.

69.     PLAINTIFF is informed and believes, and upon such information and belief alleges that POLK JOHNSON, RANDALL, DUNN held a high value of personal values and beliefs that L.T.N. should be place in public school as opposed to be homeschooled by PLAINTIFF. Defendants acted upon its own personal values and beliefs by producing the said false IEP, allegations, assessment, evaluation, recommendations, and testimonies.

70.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Aug. 23,2016, because of DUNN and RANDALL'S testimonies, IEP, and recommendations all of which were facilitated, consent, concurred, and/or stipulated by all all HBCSD and JOSEPH PERRY Defendants, the Lamoreaux Court declared jurisdiction, maintained the removal and separation of PLAINTIFF'S Children from her care and custody, and placed L.T.N at JOSEPH PERRY.  Defendants knew that the false IEP, recommendations, and testimonies would be utilized, submitted to, and relied upon by the Lamoreaux Court under penalty of perjury and yet, Defendants placed no concern as to the detriment of inducing and/or deceiving the Lamoreaux Court to rely upon for diagnostic purpose and/or credible valuation and assessment of PLAINTIFF and L.T.N.. Defendants, and each of them, knew that Defendants' conducts and behaviors violated PLAINTIFF's constitutional rights where it resulted in the deprivation of liberty or property interests.

71.     On Jan. 26, 2017, Jan. 30,2017, and Feb.10,2017, PLAINTIFF properly, timely, and/or substantially in compliance with serving all HBCSD and JOSEPH PERRY Defendants the notice of claim for damages and intent to seek legal actions.  On March 17,2017, HBCSD sent PLAINTIFF a rejection notice, "Notice is hereby given that the claim you presented to the Huntington Beach City School District on or about January 26,2017 was rejected on March 14,2017 by Huntington Beach City School District." JOSEPH PERRY, POLK JOHNSON, DUNN, and RANDALL failed and refused to respond.

### -Theodore R. Greenzang-

72.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Aug. 23, 2016, the Lamoreaux Court ordered PLAINTIFF to submit to 730 psychological evaluation (or "730 Psy Report") to be conducted by Christian Draven Godwin (or "DR. GODWIN") and Theodore R. Greenzang (or "GREENZANG")

73.     PLAINTIFF is informed and believes, and upon such information and belief alleges that  DR. GODWIN refused to produce 730 Psy Report of PLAINTIFF because PLAINTIFF failed to present herself in person for evaluation. On Sept. 28,2016, DR. GODWIN seek the Lamoreaux Court to clarify its order to no avail. On Oct. 18,2016, DR. GODWIN still refused and stated that it is unethical to produce 730 Psy Report of PLAINTIFF without DR. GODWIN first meet and speak with PLAINTIFF.

74.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Oct. 24,2016, GREENZANG produced the 730  Psy Report containing medical assessment, evaluation, and diagnostic of PLAINTIFF even though GREENZANG  has never met and spoke with PLAINTIFF. GREENZANG prescribed medication to PLAINTIFF, and made recommendation to the Lamoreaux Court for such an order to PLAINTIFF without any info and concerns to  PLAINTIFF'S health,"...[PLAINTIFF]... have access to...supporting her need for treatment with psychotropic medication at weekly to biweekly intervals for a duration of six to twelve months."

75.     PLAINTIFF is informed and believes, and upon such information and belief alleges

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

that GREENZANG agreed and/or acted as the puppet of OC SSA by allowing the 730 Psy Report to be medically assessed, evaluated, and diagnosed by individual OC SSA Defendants speaking through GREENZANG,"...[NAGANUMA and BECKNER-PAVONE] noted [PLAINTIFF] should have individual therapy which among other issues should address her relations with her family members and support system including her two sisters..." and thus, the CASE PLAN made this demand and order.

76.     PLAINTIFF is informed and believes, and upon such information and belief alleges that GREENZANG knew that OC SSA cannot fabricate the false CASE PLAN entitling OC SSA and related parties to have autonomous and perpetual control over PLAINTIFF's life and one with her children without GREENZANG's false 730 Psy Report of PLAINTIFF.

77.     PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 06,2017, the Lamoreaux Court ruled that PLAINTIFF'S mental health issues required removal of the children from her home supported by GREENZANG'S 730 Psy Report. GREENZANG knew the false 730 Psy Report and recommendations would be utilized, submitted to, and relied upon by the Lamoreaux Court under penalty of perjury and yet, placed no concern as to the detriment of producing it. GREENZANG knew that his conducts and behaviors and 730 Psy Report violated PLAINTIFF's constitutional rights where it resulted in the deprivation of liberty or property interests.

78.     On Feb. 10,2017, PLAINTIFF properly, timely, and/or substantially in compliance with serving GREENZANG the notice of claim for damages and intent to seek legal action.  GREENZANG failed and refused to respond.

### - COUNTY OF ORANGE; public defender : HONG NGUYEN-

79.     PLAINTIFF is informed and believes, and upon such information and belief alleges that PLAINTIFF'S original public defender was LAURA JOSE.  On October 11, 2016, PLAINTIFF was assigned to HONG NGUYEN.  LAURA JOSE was transferred to different court in Orange County, CA.

80.     PLAINTIFF is informed and believes, and upon such information and belief alleges

that during HONG NGUYEN's legal representation, HONG NGUYEN contacted and maintained a rapport with PLAINTIFF'S various family members specifically PLAINTIFF'S siblings. HONG NGUYEN gained private privilege information of PLAINTIFF. HONG NGUYEN would first consulted with PLAINTIFF'S siblings for matters concerning PLAINTIFF before taking any action and/or inactions. HONG NGUYEN knew at all relevant times that PLAINTIFF is not in good terms and no longer maintain contacts with PLAINTIFF's siblings.

81. PLAINTIFF is informed and believes, and upon such information and belief alleges that HONG NGUYEN made it appear as if she was representing PLAINTIFF when in fact, HONG NGUYEN agreed and/or acted as a puppet for OC SSA and PLAINTIFF'S siblings and related parties.

82. PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 04, 2017,Addendum Report #13 contained a report that HONG NGUYEN advised PLAINTIFF'S siblings to consider adopting her children or permanent legal guardians. During which time, PLAINTIFF learn of HONG NGUYEN's relationship with her siblings. On Jan 10, 2017, PLAINTIFF had a Marsden hearing concerning HONG NGUYEN. HONG NGUYEN admitted that she was advising PLAINTIFF'S siblings in the event the Lamoreaux Court terminated PLAINTIFF'S parental right. HONG NGUYEN refused to disclose specificity of said advise and conference to PLAINTIFF.

83. PLAINTIFF is informed and believes, and upon such information and belief alleges that HONG NGUYEN's personal value and beliefs that L.T.N. should be placed in school as opposed to be homeschooled by PLAINTIFF, and acted upon it. On Dec.12,2016 at 2:30pm, HONG NGUYEN sent PLAINTIFF an email, "Step you have taken to keep [L.T.N.] at the same school he is currently attending..."

84. PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 04,2017, HONG NGUYEN chose to re-examine NAGANUMA from OC SSA without informing PLAINTIFF in advance, and then to set PLAINTIFF up for attacks and to fail. HONG NGUYEN calculated to concede to the attacks. HONG

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

NGUYEN asked NAGANUMA whether there will be substantial danger to the physical health of PLAINTIFF'S children were they be returned to PLAINTIFF to date. NAGANUMA replied yes. HONG NGUYEN failed and refused to press for specificity but instead conceded to all parties' contend and simple replied, "it's in the report" referring to the Addendum Reports.

85.    PLAINTIFF is informed and believes, and upon such information and belief alleges that the Disposition Trial on Jan. 04, 2017 started late, PLAINTIFF thought the re-examination of NAGANUMA would continue and examination of GREENZANG and PLAINTIFF to be on Jan. 06, 2017. HONG NGUYEN advised PLAINTIFF to be prepared for questioning. Instead, on Jan. 06,2017,the trial concluded with no further and additional examination of any party and/or witness to PLAINTIFF's shock.

86.    PLAINTIFF is informed and believes, and upon such information and belief alleges that were HONG NGUYEN at least call upon GREENZANG to testify on Jan. 04,2017, the outcome would have been different in PLAINTIFF'S favor and/or set PLAINTIFF up for favorable viable appeal concerning GREENZANG and his 730 Psy Report.

87.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 06, 2016,HONG NGUYEN informed the Lamoreaux Court that L.T.N. has been asking to see PLAINTIFF more and yet, HONG NGUYEN seek to reduce visitation hours to only eight hours per week.   Since this date, PLAINTIFF has been allowed to see her children only eight hours per week.

88.    PLAINTIFF is informed and believes, and upon such information and belief alleges that HONG NGUYEN collaborated and colluded with NAGANUMA and BECKNER-PAVONE to fabricate the CASE PLAN set to fail. HONG NGUYEN stipulated to the CASE PLAN without PLAINTIFF'S knowledge and consent prior to OC SSA submitting it to the Lamoreaux Court. HONG NGUYEN informed PLAINTIFF that the hearing for the CASE PLAN scheduled on Jan. 10,2017 was vacated due to the Marsden Hearing concerning HONG NGUYEN. Instead, it proceeded forward as scheduled without PLAINTIFF'S knowledge and notice.  HONG NGUYEN allowed the CASE PLAN's

hearing to proceed without reporter's transcript. Because HONG NGUYEN failed to inform PLAINTIF the CASE PLAN hearing and its minute order dated Jan. 10,2017, PLAINTIFF did not timely file the notice of appeal concerning the CASE PLAN order and thus, waived it. On April 18,2017, MR. DEEPESH PANDIT informed PLAINTIFF of said facts.

89.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 10, 2017, PLAINTIFF and HONG NGUYEN had a Marsden Hearing. HONG NGUYEN admitted that she felt that eight hours per week was sufficient for PLAINTIFF to be with her children. HONG NGUYEN failed and refused to state with specificity as to how and why eight hours was sufficient. On Jan. 10,2017 at approx. 2:17pm, HONG NGUYEN sent PLAINTIFF an email suggesting, "...1.During the week: The caretakers dropping the children off at your home every day after [L.T.N.] is done with school; The caretakers pick the children up from your home at a specific time in the evening; 2. During the weekends:...the caretakers can drop off the children at your home in the morning and pick the children up in the evening." On Jan. 10, 2017 at approx. 2:35pm, PLAINTIFF agreed to the proposal. However, HONG NGUYEN knew the email was just a tease, and had no intention of utilizing her representation to effectuate any of the said services. On Jan.11, 2017 at approx. 3:59 p.m., as per HONG NGUYEN's email, "If I can secure your sister's cooperation,... Unfortunately, your sister is not in agreement at this time citing several concerns." HONG NGUYEN failed and refused to inform PLAINTIFF of her siblings' concerns. PLAINTIFF became further concern about HONG NGUYEN. On Jan.11, 2017 and through a series of long thread of emails, HONG NGUYEN refused to disclose to PLAINTIFF with specificity concerning HONG NGUYEN'S relationship with PLAINTIFF's siblings and related parties.

90.    PLAINTIFF is informed and believes, and upon such information and belief alleges that on Jan. 18, 2017 at approx. 1:30pm, PLAINTIFF addressed concerns regarding HONG NGUYEN with her supervisor, MR. KEN NORELLI. On Jan. 23, 2017 at 9:00 a.m. PLAINTIFF had another Marsden Hearing concerning HONG NGUYEN. The

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Lamoreaux Court still refused to remove HONG NGUYEN. On March 14,2017, PLAINTIFF was finally appointed a new public defender, MR. PANDIT DEEPESH. However, the irreparable harm and damages inflicted by HONG NGUYEN upon PLAINTIFF cannot be repaired. HONG NGUYEN knew that her conducts and behaviors would violate PLAINTIFF's constitutional rights where it resulted in the deprivation of liberty or property interests.

91.     On April 07,2017, PLAINTIFF properly, timely, and /or substantially in compliance with serving HONG NGUYEN the notice of claim for damages and intent to seek legal actions. HONG NGUYEN failed and refused to respond.

## CAUSES OF ACTION/REMEDIES

### Claim 1.   Violation of Federal Civil Rights, Title 42 U.S.C. §1983

92.     PLAINTIFF realleges, and incorporate herein as if set forth in full, all of the preceding paragraphs.

### COUNT 1

**(Family Association,Privacy, and Unlawful Search, Seizure, Interrogation, and Invasive Investigatory Examination;**

**By PLAINTIFF against COUNTY of ORANGE; OC SSA;PHAN; LOTTMAN; SALAZAR-ALLEN; MURPHY; SAPIGA; and DOES 1 through 10, Inclusive)**

93.     PLAINTIFF is informed and believes, and thereon alleges that as discussed in details above  in ¶15-20, inclusive, PHAN, LOTTMAN, SALAZAR-ALLEN, MURPHY, and SAPIGA are state actors and were acting under the  color of law when Defendants, and each of them, acted, agreed,and/or conspired  when Defendants intruded, interfered, and/or attempted to interfere with PLAINTIFF's constitutional rights to familial association under the First, Fourth, and Fourteenth Amendment, as well as those rights under applicable California Law rising to the level of a constitutionally protected right included but not limited to enter PLAINTIFF's private KAISER bedroom#353,prevent PLAINTIFF record PHAN in PLAINTIFF's private KAISER bedroom #353, search and examine PLAINTIFF's home, and search and seize

PLAINTIFF and her children's private KAISER records, examine and interview L.T.N., and all of which without PLAINTIFF's knowledge, consent, warrant,court order, and/or absent exigent circumstances.

94. PLAINTIFF is informed and believes, and thereon alleges that PHAN, LOTTMAN, SALAZAR-ALLEN,MURPHY, and SAPIGA obtained the warrant order through deception, fraud, and/or false pretense.

95. PLAINTIFF is a citizen of the United States, protected by 42 U.S.C. §1983.

96. Defendants committed these unconstitutional acts without proper justification or authority, and without probably cause, exigency, or court order. ( See, *Mabe v. County of San Bernadino* (2001) 237 F.3d 1101.)

97. Defendants, and each of them, were acting under color of statue law when they acted, or knew and agreed and thereby conspired, to violate PLAINTIFF's civil rights without proper or just cause and/or authority under the First, Fourth, and Fourteenth Amendment of the United States Constitution.

98. None of the Defendants had specific, articulable evidence to support any reasonable basis for believing that PLAINTIFF's children were in immediate danger of sustaining serious bodily injury or death within the time it would have taken to obtain a protective custody warrant and/or court order. PLAINTIFF is informed and believes and thereon alleges that Defendants, and each of them, purposefully failed to seek a custody warrant and/or court order, knowing that insufficient grounds or evidence existed to support such application, and/or as a result of an unconstitutional policy, custom, or practice of never obtaining warrants and/or court order. Reasonable and less intrusive alternative means existed to secure both PLAINTIFF's civil rights and security, without the warrantless acts alleged above, yet these Defendants, and each of them, intentional failed to pursue or even investigate such less intrusive alternative means.

100. Said acts were taken deliberately, with callour or reckless indifference to the substantial rights of PLAINTIFF, or fueled by an evil motive or intent.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

101.   As a direct and proximate result of these Defendants' misconduct, PLAINTIFF has suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

102.   The wrongful and despicable conduct of Defendants, and each of them, as herein alleged was intentional, done with malice, oppression, or fraud, with a callous or reckless indifference to the rights of PLAINTIFF, or motivated by an evil intent, such that PLAINTIFF is entitled to recover punitive damages in accordance with law and subject to proof at trial.

103.   COUNTY OF ORANGE knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause PLAINTIFF to be injured and damages by COUNTY of ORANGE's wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to PLAINTIFF; and that such policies were the moving force behind the violation of PLAINTIFF's constitutional rights as alleged herein above. Namely, PLAINTIFF'S civil rights were violated, as mentioned above and then lied about PLAINTIFF in various court reports submitted to the juvenile court.

104.   These actions , and/or inactions, of COUNTY OF ORANGE are the moving force behind, and direct and proximate cause of PLAINTIFF's injuries, as alleged herein; and as a result, PLAINTIFF has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, PLAINTIFF has incurred, and will continue to incur, costs and expenses, including those as authorized by 42 U.S.C.§1988, to an extent and in an amount subject to proof at trial.

## COUNT 2

**(Familial Association ,Right to Be Free From Dishonesty in Juvenile Court Proceedings, i.e. Perjury, Fabrication of Evidence, Suppression of Exculpatory**

**Evidence; By PLAINTIFF against ALL COUNTY OF ORANGE and OC SSA Defendants, and DOES 1 through 10, inclusive)**

105. PLAINTIFF properly discussed in detail above in ¶ 15-42, 91-104 in violations of PLAINTIFF's civil rights.

106. PLAINTIFF is informed and believes and there alleges that , at all relevant herein, there existed a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that a reasonable social services agent in Defendants' situation would know it is unlawful to lie, fabricate evidence, and/or suppress material exculpatory evidence in court reports or any other document filed with the juvenile court to influence judicial decision making.

107. In fact, Defendants, and each of them, had the affirmative and self evident duty to be truthful, accurate, and complete in petitions, reports, and documents submitted to a sovereign Court with power to adjudicate substantial rights, including parental rights, and to refrain from using improper and deceptive means to obtain judicial sustention of recommendations seeking to disparage PLAINTIFF's liberty interests.

108. In doing the things alleged hereabove, Defendants, and each of them, were acting under color of state law when they acted, or knew and agreed and thereby conspired, to knowingly present false allegations, false or coerced testimony, fabricated evidence, and/or suppress exculpatory evidence, before the Juvenile Court, thereby violating PLAINTIFF's rights found in the First, Fourth, and Fourteenth Amendment to the United States Constitutional and breaching their duty to PLAINTIFF.

109. As a direct and proximate result of these Defendants' violations, and in accordance with 42 U.S.C.§ 1983, PLAINTIFF's civil rights have been violated in that PLAINTIFF has suffered, and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

110. The wrongful and despicable conduct of Defendants, and each of them, as herein alleged was intentional, done with malice, and oppression, or fraud, with a callous or reckless indifference to the rights of PLAINTIFF, or motivated by an evil intent, such that

PLAINTIFF is entitled to recover punitive damages in accordance with law and subject to proof at trial.

## COUNT 3

**(Familial Association, Right to Be Free From Dishonesty in Juvenile Court Proceedings, i.e. Perjury, Fabrication of Evidence, Suppression of Exculpatory Evidence; By PLAINTIFF against ALL Individual KAISER Defendants, POLK JOHNSON, RANDALL, DUNN, GREENZANG, HONG NGUYEN, and DOES 1 through 10, inclusive)**

111.    PLAINTIFF is informed and believes, and thereon alleges that private participants act under "color of law" when they are a willful participant in joint activity with the State or its agents (United States v. Price, 383 U.S. 787, 794 (1966)).

112.    PLAINTIFF is informed and believes, and thereon alleges that PLAINTIFF properly described in detail above in ¶ 43-53, inclusive in violations of PLAINTIFF's civil rights as to all individual KAISER Defendants.  ALL Individual KAISER Defendants acted under the color of law when Defendants, and each of them, acted, or knew and agreed and thereby conspired, to violate PLAINTIFF's civil rights by deliberately misdiagnosed, mis-assessed, and/or miss-evaluated PLAINTIFF's mental illness and unfit parent, and then falsely alleged PLAINTIFF abuse and neglect her chilren for the purpose of inducing and/or deceiving OC SSA to apply for the warrant to remove PLAINTIFF's children from her care and custody, and inducing and/or deceiving the Lamoreaux Court to grant and issue the said warrant order.  Defendants were abusing its own medical profession as the authority.  DUBYAK's deceitful and retaliatory conduct resulted of somehow gained a single information of PLAINTIFF being single with three children.

113.    PLAINTIFF is informed and believes, and thereon alleges that PLAINTIFF properly discussed in detail above in ¶54-71, inclusive in violations of PLAINTIFF's civil rights as to POLK JOHNSON, RANDALL, DUNN.  Defendants, and each of them acted under color of law when Defendants, and each of them acted, or knew and agreed and thereby conspired, to violate PLAINTIFF's civil rights by deliberately misdiagnosed, mis-

assessed, and/or miss-evaluated PLAINTIFF's mental illness and unfit parent, fabricated false incomplete, inaccurate, fraudulent IEP, recommendations, and testimonies inducing and/or deceiving the Lamoreaux Court to  rely upon for diagnostic purpose and/or credible valuation and assessment of PLAINTIFF and L.T.N for the purposes of  maintaining the separation  of PLAINTIFF's children from her care and custody and place L.T.N. at JOSEPH PERRY.

114.    PLAINTIFF is informed and believes, and thereon alleges that PLAINTIFF properly discussed in detail above in ¶ 71-78 in violations of PLAINTIFF's civil rights as to GREENZANG.  GREENZANG  acted under color of law when GREENZANG acted, or knew and agreed and thereby conspired, to violate PLAINTIFF's civil rights by deliberately fabricated the incomplete, inaccurate, and fraudulent 730 Psy Report containing false medical assessment, evaluation,and diagnostic of PLAINTIFF to the Lamoreaux Court inducing and/or deceiving it to rely upon for diagnostic purpose and/or credible valuation and assessment of PLAINTIFF for the purposes of maintaining the separation of PLAITNIFF's children from her care and custody, prescribed PLAINTIFF psychotropic medication, and assisting and facilitating OC SSA and related parties exercise broad discretion autonomy control over the very life of PLAINTIFF and that with her children, the  CASE PLAN.

115.    PLAINTIFF is informed and believes, and thereon alleges that PLAINTIFF properly discussed in detail above in ¶ 78-91 in violations of PLAINTIFF's civil rights as to HONG NGUYEN.  HONG NGUYEN was acting under the color of the law when HONG NGUYEN acted, or knew and agreed and thereby conspired, to violate PLAINTIFF's civil rights by refusing and failing to provide PLAINTIFF effective assistance of counsel for the purposes of never intending for PLAINTIFF to be reunified with her Children legally and permanently without perpetual interferences by OC SSA and related parties, and ensuring PLAINTIFF'S siblings secure smooth adoption of her Children.  HONG NGUYEN's deliberate failure and refusal resulted in PLAINTIFF loosing liberal visitations with her children as per Lamoreaux Court's orders, and bringing

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

PLAINTIFF's children home pending all matters at Lamoreaux Court, etc.. Instead, PLAINTIFF's children are subjected under the hostile roof of her siblings allowing said parties to manipulate and poison L.T.N.'s minds of PLAINTIFF being an unfit parent. PLAINTIFF lost valuable unmeasurable rights, privileges, visitation hours with her children. PLAINTIFF was subjected, monitored, and harassed by OC SSA Defendants during visitations in confined space affording said parties to continue fabricating false reports to make it appear as if PLAINTIFF possessed mental illness and an unfit parent. HONG NGUYEN knew at all relevant time that HONG NGUYEN's conducts and behaviors would result in the violation and deprivation of PLAINTIFF's constitutional rights to liberty or property interests.

116.    PLAINTIFF is informed and believes and there alleges that , at all relevant herein, there existed a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that a reasonable professionals in Defendants' situation would know it is unlawful to lie, fabricate evidence, and/or suppress material exculpatory evidence in court reports or any other document filed with the juvenile court to influence judicial decision making.

117.    In fact, Defendants, and each of them, had the affirmative and self evident duty to be truthful, accurate, and complete in matters, petitions, reports, and documents submitted to a sovereign Court with power to adjudicate substantial rights, including parental rights, and to refrain from using improper and deceptive means to obtain judicial sustention of recommendations seeking to disparage PLAINTIFF's liberty interests.

118.    In doing the things alleged hereabove, Defendants, and each of them, were acting under color of state law when they acted, or knew and agreed and thereby conspired, to knowingly present false allegations, false or coerced testimony, fabricated evidence, and/or suppress exculpatory evidence, before the Juvenile Court, thereby violating PLAINTIFF's rights found in the Fourth and Fourteenth Amendment to the United States Constitutional and breaching their duty to PLAINTIFF.

119.    As a direct and proximate result of these Defendants' , and each of them violations,

and in accordance with 42 U.S.C.§ 1983, PLAINTIFF's civil rights have been violated in that PLAINTIFF has suffered, and will continue to suffer, general and special damages in an amount not yet ascertained but which shall be shown according to proof at trial.

120. The wrongful and despicable conduct of Defendants, and each of them, as herein alleged was intentional, done with malice, and oppression, or fraud, with a callous or reckless indifference to the rights of PLAINTIFF, or motivated by an evil intent, such that PLAINTIFF is entitled to recover punitive damages in accordance with law and subject to proof at trial.

## Count 4
## 42 U.S.C§ 1983 - *MONELL-RELATED* CLAIMS
### (By PLAINTIFF Against COUNTY OF ORANGE, OC SSA , RYAN as DIRECTOR of OC SSA, POLK JOHNSON as PRINCIPAL of JOSEPH PERRY, DUNN as head facilitator for IEP of JOSEPH PERRY,and DOES 1 through 10, Inclusive)

121. PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

122. Defendants COUNTY OF ORANGE, including through its OC SSA entity, is a "person" within the meaning of 42 U.S.C§ 1983 and subject to Monell liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.

123. Defendants, and each of them, and those Defendants sue in their official capacity who had supervisory and/or policy making authority, had a duty to PLAINTIFF at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed PLAINTIFF under the United States Constitution, including those under the First, Fourth, and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; the right to be free of governmental deception, trickery, fabrication of evidence, and suppression of exculpatory evidence in juvenile dependency proceedings; and the right to procedural due process. Said defendants also had a duty to use reasonable

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

care to select, assign, supervise, train, control and view the activities of all their agents, officers, employees and those acting under them, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of PLAINTIFF in order to avoid causing the injuries and damages alleged herein.

124.   PLAINTIFF is informed and believes and thereon alleges that as the DIRECTOR OF OC SSA, MICHAEL F. RYAN, was at all times relevant herein, possessed of final policy making authority in that the County Board of Supervisors delegated such power and responsibility to them, including but not limited to the responsibility to set policies and priorities for OC SSA and the supervision and management of staff performing all child welfare services.

125.   PLAINTIFF is informed and believes and thereon alleges that as the PRINCIPAL of JOSEPH PERRY, POLK JOHNSON, was at all times relevant herein, possessed of final policy making authority in that the HBCSD delegated such power and responsibility to her, including but not limited to the responsibility to set policies and priorities for JOSPH PERRY and the supervision and management of staff performing all child welfare services.

126.   PLAINTIFF is informed and believes and thereon alleges that as the HEAD FACILITATOR of IEP at JOSEPH PERRY, DUNN was at all times relevant herein, possessed of final policy making authority in that HBCSD delegated such power and responsibility to her, including but not limited to the responsibility to set policies and priorities for JOSEPH PERRY and the supervision and management of staff performing all child welfare services.

127.   Based on the duties charged to COUNTY OF ORANGE, including the nature of its work relating to juvenile dependency proceedings, COUNTY OF ORANGE and MICHAEL F. RYAN knew or should have known of the obvious need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children.

128.   Based on the duties charged to JOSEPH PERRY, including the nature of its work

relating to juvenile dependency proceedings, POLK JOHNSON and DUNN knew or should have known of the obvious need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children.

129.    Defendant COUNTY OF ORANGE, including through it entity OC SSA, established and/or followed policies, procedures, customs, and/or practices which policies were the moving force behind the violations of PLAINTIFF's constitutional rights, including those under the Fourth and Fourteenth Amendments, by, but not limited to:

a.      the policy of misrepresented facts, mis-materialized, and/or mis-characterized PLAINTIFF to remove and maintain the separation of PLAINTIFF and her children;

b.      the policy of colluding and collaborating with Individual HBCSD and JOSEPH PERRY Defendants, GREENZANG, and individual KAISER Defendants to fabricate false reports of PLAINTIFF's mental illness and unfit parent to maintain the separation of PLAINTIFF and her children;

c.      the policy of colluding and collaborating with PLANTIFF's public defender, HONG NGUYEN to maintain the separation of PLAINTIFF's children from her care and custody;

d.      the policy of punishing and/or retaliating against PLAINTIFF for not agreeing with OC SSA's parenting ideas even though they do not arise to child abuse and neglect and/or come into contact with juvenile proceedings;

e.      the policy of intruding, interfering,and/or intervening PLAINTIFF's private affairs at KAISER even though they do do not arise to child abuse and neglect and/or come into contact with juvenile proceedings;

f.      the policy of intruding, interfering,and/or intervening PLAINTIFF's private affairs at home with family and relatives even though they do do not arise to child abuse and neglect and/or come into contact with juvenile proceedings;

g.      the policy of failing to provide neutral third party location and monitors to promote and preserve PLAINTIFF's family unity with her children in a stress free, harass free, and non-hostile environments;

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

h.      the policy of improperly trained employees to properly carry out their tasks in an impartial manner;

i.      the policy of examining L.T.N. without PLAINTIFF's knowledge, consent, exigency, need, and/ or proper court order;

j.      the policy of trespass, seize, examine, and/or search PLAINTIFF's private property or interests without PLAINTIFF's knowledge, consent, exigency, need, and/or proper court order;

k.      the policy of trespass,seize, examine, and/or search PLAINTIFF's private medical records without PLAINTIFF's knowledge, consent, exigency, need, and/ or proper court order;

l.      the policy of failing to provide PLAINTIF information advising her rights and dependency procedures;

m.      the policy of failing to provide timely notices of the detention report but just moments before the Detention Hearing ;

n.      the policy of failing to provide PLAINTIFF the warrant application containing specificity as to justify the warrant order at the time of service of the warrant order;

o.      the policy of failing and refusing to consider returning PLAINTIFF's children without first gaining broad discretion control and exercise perpetual autonomy over PLAINTIFF's life and one with her children, the CASE PLAN through false pretense, fraud, and deceit.

p.      the policy of failing to provide information to all rights conferred by the WIC to PLAINTIFF at the Detention Hearing, including, but not limited to, the right to subpoena, confront, and cross examine all relevant witnesses;

q.      the practice of setting forth allegations in Juvenile Dependency Petitions claiming violations of WIC 300 regardless of whether or not specific, articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

r.      the policy of using trickery, duress, fabrication and/or false testimony or evidence, and in failing to provide exculpatory evidence, in preparing and presenting reports and

court documents to the Court causing an interference with the PLAINTIFF's rights, including those as to familial relations and injuring and harming them; and by acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

s.      the policy, practice, or custom of making knowingly false allegations of child abuse, neglect, or abandonment in Juvenile Dependency Petitions signed under penalty of perjury as a means of intimidating parents, by coercion, into accepting lesser charges, whether true or not and whether justified by extant evidence or not, thereby enabling the county to keep the family in the juvenile dependency system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments; and  the custom, policy, and/or practice of fraudulently charging parents with child abuse where none exists;

t.      Aiding and abetting in the violation of civil rights guaranteed to individuals, including those under the Fourth (protecting against unreasonable search and seizure) and Fourteenth (protecting against invasion of autonomy privacy) Amendments, by engaging in the aforementioned conduct;

u.      Conspiring to violate civil rights guaranteed to individuals, including those under the Fourth (protecting against unreasonable search and seizure) and Fourteenth (protecting against invasion of autonomy privacy) Amendments, by engaging in the aforementioned conduct;

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings.  PLAINTIFF may seek leave to amend this pleading as more information becomes available.)

131.   By failing to provide information to all rights conferred by the WIC to PLAINTIFF at the Detention Hearing, these material facts were intentionally withheld to ensure that

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

PLAINTIFF would not and could not assert or exercise any of her rights properly and /or timely. Defendants and each of them defrauded the PLAINTIFF and the Juvenile Court, securing tainted court orders forcibly unopposed in any way by PLAINTIFF. PLAINTIFF was unaware of any of these rights, that she in fact had any, or how to exercise them at the Detention Hearing. But for the concealment of these facts, and PLAINTIFF'S ignorant inaction, the outcome of the Detention Hearing would likely have been much different, even sparing PLAINTIFF the protracted, needless separation altogether, had she been allowed to learn and exercise the relevant rights guaranteed by the WIC.

132.    PLAINTIFF was prejudiced in legal and public forums, forced to overcome erroneous credibility issues in the eyes of the Court and the community. This fraud and deceit directly caused irreparable pain and suffering to both PLAINTIFF and laid the very foundation for PLAINTIFF'S separation under false pretense.

133.    COUNTY OF ORANGE, including by and through its entity OC SSA and its policy making officials, breached its duties and obligations to PLAINTIFF by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Social Worker Defendants, and DOES 1 through 10, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected parents, including PLAINTIFF herein.

## Claim 2.  Violation of for Invation of Privacy

134.    PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

## Count 1[PENDING PETITION PURSUANT TO GOV. CODE §946.6]

### (By PLAINTIFF Against ALL COUNTY of ORANGE and OC SSA Defendants, and DOES 1 through 10, Inclusive )

135.    PLAINTIFF has a protected liberty interest in the privacy and integrity of their

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

family unit, free of unwarranted governmental intrusion.

136. Individual OC SSA Defendants intentionally penetrated upon the private affairs and concerns of PLAINTIFF at KAISER and home. Defendants, and each of them, entered PLAINTIFF's private KAISER bedroom#353, searched and seized PLAINTIFF and her children 's private KAISER records, searched and examined PLAINTIFF's home, and examined and interviewed L.T.N. all without authorization, court order, PLAINTIFF's consent, and/or in the absence of exigent circumstances; failed to discharge their duty to consider whether her children could remain safely in the residence of PLAINTIFF, prior to removal; continued to maintain the separation of PLAINTIFF's family unit by refusing and failing to provide liberalize services to preserve family unity under one roof; colluded and collaborated with individual HBCSD and JOSEPH PERRY Defendants, GREENZANG, and HONG NGUYEN to maintain the separation of PLAINTIFF'S children from her care and custody; interfered and/or intervene in matters and concerns between PLAINTIFF and her family members, siblings, relatives, etc.. Defendants punished and/or retaliated against PLAINTIFF alleged as being disrespectful and/or ungrateful to family and general public included Defendants and KAISER professionals. Said intrusion was with malice and unprivileged. Defendants' acts and/or omissions were carried out intentionally, and with full knowledge of the probable consequences thereof in violation of 42 U.S.C. § 1983 and/or intent of WIC codes .

137. California Constitution has an enumerated privacy clause at Art. I, and that is self-executing. PLAINTIFF had a reasonable expectation of right to privacy in her familial zone, and to be free from unreasonable searches and seizures. Defendants acted to cause a serious invasion of PLAINTIFF'S civil right to privacy under Cal. Const. Art. I,§1, 7.

138. COUNTY OF ORANGE AND OC SSA are vicariously responsible for the conducts and behaviors of individual OC SSA Defendants, and DOES 1 through 10, inclusive, under California Government Code section §815.2, and other applicable statutory case law.

139. As the direct and proximate result of Individual OC SSA Defendants dereliction of

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

duty, PLAINTIFF has suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

### Count 2

**(By PLAINTIFF Against ALL KAISER Defendants, GREENZANG, ALL HBCSD and JOSEPH PERRY Defendants, HONG NGUYEN, and DOES 1 through 10, Inclusive )**

140.   Individual KAISER Defendants intentionally penetrated upon the private affairs and concerns of PLAINTIFF.  Defendants knew that: threatening the removal and separation of PLAINTIFF'S children and adversely affect/effect the relationship of PLAINTIFF and her children; falsely alleging PLAINTIFF of child abuse and neglect; releasing PLAINTIFF and her children's medical records to the general public; misdiagnosed, mis-assessed, and/or mis-evaluated PLAINTIFF in PLAINTIFF's KAISER records; matters contained in PLAINTIFF's KAISER records; interfering and intervening matters and concerns between PLAINTIFF and her siblings; and all of which  are private matter and concern of PLANTIFF.   Defendants proceeded with a willful conscious disregard for the probable consequences for emotional injury. PLAINTIFF has a reasonable expectation of solitude, seclusion and privacy in her private affairs and concerns.  Defendants intentionally and unreasonably intruded upon the seclusion, solitude, private affairs and concerns of PLAINTIFF.  Defendants' conducts and behaviors were substantial factor in the physical, mental, and emotional injuries that PLAINTIFF suffered, and will continue to suffer, and all to an extent and in an amount subject to proof at trial.

141.   POLK JOHNSON, RANDALL, and DUNN intentionally penetrated upon the private affairs and concerns of PLAINTIFF.  Defendants knew that the recommendations of maintaining the separation of PLAINTIFF'S children from her care and custody and place L.T.N. at JOSEPH PERRY are private matters and concerns of PLAINTIFF. Defendants knew that falsely diagnosed, assessed, and/or evaluated PLAINTIFF's mental illness and unfit parent, and then alleged PLAINTIFF abuse and

neglect her children are private matters and concerns of PLAINTIFF. Defendants proceeded with a willful conscious disregard for the probable consequences for emotional injury. PLAINTIFF has a reasonable expectation of solitude, seclusion and privacy in her private affairs and concerns. Defendants intentionally and unreasonably intruded upon the seclusion, solitude, private affairs and concerns of PLAINTIFF. Defendants' conducts and behaviors were substantial factor in the physical, mental, and emotional injuries that PLAINTIFF suffered, and will continue to suffer, and all to an extent and in an amount subject to proof at trial.

142.    GREENZANG intentionally penetrated upon the private affairs and concerns of PLAINTIFF. GREENZANG knew that prescribing psycho tropic medications, recommending the separation of PLAINTIFF'S children from her care and custody, placing PLAINTIFF's children with her siblings, recommending counseling services between PLAINTIFF and her siblings and relatives are private matters and concerns of PLAINTIFF. Defendants knew that falsely diagnosed, assessed, and/or evaluated PLAINTIFF's mental illness and unfit parent, and then alleged PLAINTIFF abuse and neglect her children are private matters and concerns of PLAINTIFF. GREENZANG proceeded with a willful conscious disregard for the probable consequences for emotional injury. PLAINTIFF has a reasonable expectation of solitude, seclusion and privacy in her private affairs and concerns. GREENZANG  intentionally and unreasonably intruded upon the seclusion, solitude, private affairs and concerns of PLAINTIFF. GREENZANG's conducts and behaviors were substantial factor in the physical, mental, and emotional injuries that PLAINTIFF suffered, and will continue to suffer, and all to an extent and in an amount subject to proof at trial.

143.    HONG NGUYEN intentionally penetrated upon the private affairs and concerns of PLAINTIFF. HONG NGUYEN knew that advising,consulting,and/or conferencing with PLAINTIFF's siblings concerning adoption and/or permanent legal guardianship of PLAINTIFF'S children; matters adversely affect/effect the relationship of PLAINTIFF and her children; PLAINTIFF's visitation services and related matters;

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

PLAINTIFF's personal life affairs and concerns and; all of which are private matter and concern of PLAINTIFF. HONG NGUYEN proceeded with a willful conscious disregard for the probable consequences for emotional injury of PLAINTIFF, without PLAINTIFF's knowledge and consent, and then failed and refused to disclose and provide with specificity of said matters to PLAINTIFF. PLAINTIFF has a reasonable expectation of solitude, seclusion and privacy in her private affairs and concerns. HONG NGUYEN intentionally and unreasonably intruded upon the seclusion, solitude, private affairs and concerns of PLAINTIFF. HONG NGUYEN'S conducts and behaviors were substantial factor in the physical, mental, and emotional injuries that PLAINTIFF suffered, and will continue to suffer, and all to an extent and in an amount subject to proof at trial.

144. Defendants', and each of them intrusion was with malice and unprivileged. Each and every act mentioned was carried out intentionally, and with full knowledge of the probable consequences thereof in violation of 42 U.S.C. § 1983 (First,Fourth, and Fourteenth Amendment) and/or intent of WIC codes .

145. California Constitution has an enumerated privacy clause at Art. I, and that is self-executing. PLAINTIFF had a reasonable expectation of right to privacy in her familial zone, and to be free from unreasonable searches and seizures. Defendants acted to cause a serious invasion of PLAINTIFF'S civil right to privacy under Cal. Const. Art. I,§1, 7.

146. The conducts of individual Defendants, and each of them, as alleged herein above, engaged in a willful conscious disregard for the probably consequences for emotion injury of PLAINTIFF. Therefore, pursuant to Cal. Civ. Code§ 3294, PLAINTIFF is entitled to an award of punitive damages.

### Claim 3. Intentional Infliction of Emotional Distress

147. PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

### Count 1  [PENDING PETITION PURSUANT TO GOV. CODE §946.6]
### (By PLAINTIFF against ALL COUNTY OF ORANGE and OC SSA Defendants,

**and DOES 1 through 10, Inclusive)**

148.  In light of the sheer volume of dependency actions initiated by COUNTY of ORANGE and OC SSA, Defendants and each of them were aware, or should have been aware, of the foreseeable perils their willful misconduct subjected PLAINTIFF to and the likely injuries as they accumulated.  Defendants did nothing to mitigate either the risks or the resulting damage to PLAINTIFF.  In fact,this is not the first time that COUNTY of ORANGE, OC SSA, and NAGANUMA are defendants in this court by plaintiff not related to here but for similar allegations, conducts, and/or behaviors.

149.  Defendants and each of them, engaged in the above-mentioned deceitful, extreme, outrageous, unlawful, and unprivileged conduct, including, but not limited to intentionally intruding, penetrating, interfering, and/or intervening upon the private affairs and concerns of PLAINTIFF at KAISER and at her home; securing warrant order through fraud, deceit, false pretense; presenting perjured testimony and fabricating evidence to support their false and malicious allegations that PLAINTIFF abused and neglected her children and failing to disclose exculpatory evidence; failing and refusing to secure a harassed free, stressed free, and/or hostile free environments and monitors for PLAINTIFF's visit with her children; failing and refusing to provide services to maintain, promote, and/or preserve PLAINTIFF's children home prior to removal and/or pending matters at Lamoreaux Court; colluding and collaborating with HBCSD and JOSEPH PERRY Defendants, GREENZANG, and HONG NGUYEN for the purposes of maintaining the separation of PLAINTIFF's children from her care and custody; punishing and/or retaliating against PLAINTIFF for allegedly being disrespectful and/or ungrateful to family and general public included Defendants and KAISER professionals; and ultimately gaining broad discretion control and exercise perpetual autonomy over PLAINTIFF's life and one with her children, the CASE PLAN through false pretense, fraud, and deceit.

150.  The CASE PLAN (conceived, implemented, and filed at the will of the COUNTY OF ORANGE and OC SSA), was characterized as the only way to get

PLAINTIFF's children home.  The alternative to PLAINTIFF satisfying all terms and conditions, approved and ratified by Defendants and each of them, is permanent loss of her parental rights and, in fact, her children to be terminated by the Court at Defendants' recommendation.  The terms, conditions, and/or demands contained in the CASE PLAN were unreal, violated the spirit, letter, and/or intent of the WIC codes, abuse the juvenile proceedings, etc.. Defendants, and each of them, manipulatively engineered to never intended to return PLAITNIFF's children without first gaining the broad discretion control and exercise perpetual autonomy over PLAINTIFF's life and one with her children, the CASE PLAN through fraud, deceit, and false pretense.

151.   Each of the individual OC SSA Defendants and DOES 1 through 10, inclusive participated in, conspired with, approved of, and/or aided and abetted the conducts of the remaining Defendants.

152.   Defendants, and each of them, intended to cause harm to PLAINTIFF, or acted with a reckless disregard of the possibility that PLAINTIFF would suffer extreme emotional distress as a result of the conduct and behaviors.

153.   COUNTY OF ORANGE AND OC SSA are vicariously responsible for the conduct of individual OC SSA Defendants, GREENZANG, and DOES 1 through 10, inclusive, under California Government Code section §815.2, and other applicable statutory case law.

154.   As the direct and proximate result of Defendants' extreme and outrageous conduct, PLAINTIFF suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial.

155.   PLAINTIFF is informed and believes that Individual OC SSA Defendants, and DOES 1 through 10, inclusive, acted knowingly and willfully, with malice and oppression, and with the intent to harm PLAINTIFF.  Therefore, PLAINTIFF is entitled to an award of punitive damages.

## Count 2

**(BY PLAINTIFF against ALL KAISER Defendants, ALL  HBCSD and JOSEPH PERRY Defendants, GREENZANG, HONG NGUYEN, and DOES 1 through 10, Inclusive )**

157.   PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

158.   Defendants, and each of them, engaged in the above-mentioned deceitful, extreme, outrageous, unlawful, and unprivileged conduct, resulted in the deprivation of PLAINTIFF's liberty or property interests, the removal and separation of PLAINTIFF's children from her care and custody.

159.   Defendants, and each of them, extreme and outrageous conduct was conducted with the intention of causing, or reckless disregard of the probability of causing, emotional distress to PLAINTIFF.

160.   Defendants, and each of them, intended to cause harm to PLAINTIFF, or acted with a reckless disregard of the possibility that PLAINTIFF would suffer extreme emotional distress as a result of the conduct and behaviors.

161.   As the direct and proximate result of Defendants', and each of them, extreme and outrageous conduct, PLAINTIFF suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial.

162.   PLAINTIFF is informed and believes that Defendants, and each of them, and DOES 1 through 10, inclusive, acted knowingly and willfully, with malice and oppression, and with the intent to harm PLAINTIFF.  Therefore, PLAINTIFF is entitled to an award of punitive damages.

### Claim 4.  Breach of Contract

**(By PLAINTIFF Against All KAISER Defendants and DOES 1 through 10, Inclusive)**

163.   PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

forth in full, each of the foregoing paragraphs.

164. A contract existed between PLAINTIFF and the KAISER Defendants.

165. PLAINTIFF performed her portion of the contract.

166. The KAISER Defendants breached the contract as properly discussed above but not limited to failing and refusing to provide PLAINTIFF proper medical care and services; releasing PLAINTIFF's private KAISER records to the general public; documenting and/or recording defamatory and derogatory comments and/or remarks in PLAINTIFF's KAISER records; discussing PLAINTIFF'S private doctor-patient privilege information to the general public; falsely diagnosing, assessing, and/or evaluating PLAINTIFF's mental illness and unfit parent; colluding and collaborating to remove and separate PLAINTIFF's children from her care and custody under fraud, deceit, and false pretense.

167. As a result of the KAISER Defendants' breach of the contract, PLAINTIFF suffered damages and harm to an extent and in an amount subject to proof at trial.

### Claim 5. Breach of Fiduciary Duty

**By Plaintiff Against All KAISER Defendants, HONG NGUYEN, and DOES 1 through 10, Inclusive**

168. PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

169. Defendants, and each of them, and PLAINTIFF had a fiduciary relationship, with each party owing the other a fiduciary duty.

170. Defendants, and each of them, breached their fiduciary duty owed to PLAINTIFF.

171. Because of Defendants', and each of them, breach of fiduciary duty, PLAINTIFF was harmed and suffered damages.

### Claim 6. Negligence

**(BY PLAINTIFF against ALL KAISER Defendants, ALL  HBCSD and JOSEPH PERRY Defendants, GREENZANG, HONG NGUYEN, and DOES 1 through 10,**

**Inclusive )**

172.   PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

173.   PLAINITFF is informed and believes, and thereon alleges that to the extent that the actions of Defendants, and each of them, described above were not deliberate or intentional, they were done with gross negligence and deliberate indifference to and callous disregard for PLAINTIFF'S rights and well being.

174.   Defendants owed PLAINTIFF certain duties imposed by law.

175.   Defendants breached those duties owed to PLAINTIFF.

176.   Defendants were the proximate causation of those duties being breached.

177.   PLAINTIFF has been harmed and damaged due to Defendants, and each of them, breach of duties owed to PLAINTIFF.

## Claim 7.  Actual Fraud, Intentional Deceit

178.   PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

## Count 1[PENDING PETITION PURSUANT TO GOV. CODE §946.6]
## (BY PLAINTIFF against Individual COUNTY OF ORANGE and OC SSA
## Defendants, and DOES 1 through 10, Inclusive )

179.   PLAINTIFF is informed and believes, and thereon alleges that at all relevant times, Defendants, and each of them, knew or had reasons to know that Defendants, and each of them, abuse its profession as the authority and fabricated false diagnosis, assessment, and/or evaluation of PLAITNIFF's mental illness and unfit parent.  Defendants did so without reasonable grounds for believing it to be true.  Defendants held PLAINTIFF's children hostage and alleged PLAINTIFF of child abuse and neglect in disguise as punishment  and/or retaliation because Defendants do not like PLAINTIFF alleged as being disrespectful and/or ungrateful to family and general public included Defendants and KAISER professionals. As a result of Defendants' fraud, deceit, and false pretense, PLAINTIFF is forced into and/or under perpetual broad discretion and control over the

very life of PLAINTIFF and one with her children by OC SSA and related parties. PLAINTIFF's children are still being separation from her care and custody.

180. COUNTY OF ORANGE AND OC SSA are vicariously responsible for the conduct of individual OC SSA Defendants, GREENZANG, and DOES 1 through 10, inclusive, under California Gov. Code section § 815.2, and other applicable statutory case law.

181. Defendants', and each of them, conduct was an intentional misrepresentation, deceit, or concealment of materials known to Defendants with the intention of the part of the Defendants of thereby depriving PLAINTIFF of property or legal rights or otherwise causing injury, and was despicable conduct that subjected PLAINTIFF to a cruel and unjust hardship in conscious disregard of PLAINTIFF's rights, so as to justify an award of exemplary and punitive damages.

## Count 2

### (BY PLAINTIFF against ALL KAISER Defendants, ALL  HBCSD and JOSEPH PERRY Defendants, GREENZANG, and DOES 1 through 10, Inclusive )

182. PLAINTIFF is informed and believes, and thereon alleges that at all relevant times, Defendants, and each of them, knew or had reasons to know that Defendants, and each of them, abuse its profession as the authority and fabricated false diagnosis, assessment, and/or evaluation of PLAITNIFF's mental illness and unfit parent. Defendants, and each of them did so without reasonable grounds for believing it to be true. As a result of Defendants', and each of them, fraud, deceit, false pretense,PLAINTIFF is forced into and/or under perpetual broad discretion and control over the very life of PLAINTIFF and one with her children  by OC SSA and related parties. PLAINTIFF's children are still being separation from her care and custody.

183. Defendants', and each of them, conduct was an intentional misrepresentation, deceit, or concealment of materials known to Defendants with the intention of the part of the Defendants of thereby depriving PLAINTIFF of property or legal rights or otherwise causing injury, and was despicable conduct that subjected PLAINTIFF to a cruel and unjust hardship in conscious disregard of PLAINTIFF's rights, so as to justify an

award of exemplary and punitive damages.

### Claim 8.  Professional Negligence

**By PLAINTIFF Against All KAISER Defendants,  POLK JOHNSON, RANDALL, DUNN, GREENZANG, HONG NGUYEN, and DOES 1 through 10, Inclusive**

184.   PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

185.   Defendants, and each of them, owed PLAINTIFF a duty arising out of a preexisting relationship.

186.   Defendants, and each of them, owed PLAINTIFF a professional duty of a standard of care and services in performing all said care and services pertaining to PLAINTIFF.

187.   Defendants, and each of them, breached their duty and standard of care owed to PLAINTIFF  in providing said services.

188.   Defendants, and each of them,  proximately caused the breach of duty via a breach of the standard of care owed to PLAINTIFF.

189.    Defendants, and each of them breached their duties owed to PLAINTIFF by taking an adverse position against PLAINTIFF in violation of 42 U.S.C.§ 1983 (First, Fourth, and Fourteenth Amendments), intent of the WIC codes, abuse the juvenile proceedings, and subjected PLAINTIFF into and/or under the broad discretion control and exercise of OC SSA and related parties over the very life of PLAINTIFF and one with her children.

190.   As a proximate result of Defendants', and each of them, breach of their duties, PLAINTIFF has been damaged in an amount to be determined at time of trial.

### Claim 9.  Negligent Infliction of Emotional Distress

**(BY PLAINTIFF against ALL KAISER Defendants, ALL  HBCSD and JOSEPH PERRY Defendants, GREENZANG, HONG NGUYEN, and DOES 1 through 10, Inclusive )**

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

192.    PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

193.    Defendants, and each of them, owed PLAINTIFF a duty arising out of a preexisting relationship.

194.    Defendants, and each of them, breached their duties owed to PLAINTIFF.

195.    Defendants, and each of the, proximately caused PLAINTIFF to suffer emotional distress.

196.    The emotional distress caused by Defendants', and each of them, negligence forms the basis for the harm and damages suffered by PLAINTIFF.

197.    KAISER health care providers-patient relationships existed between KAISER Defendants and PLAINTIFF, a duty of care was owed to PLAINTIFF.  Individual KAISER Defendants owed a duty to PLAINTIFF to exercise care and skill in providing said services, care, evaluation, assessment, and/or diagnosis of PLAINTIFF.

198.    Individual KAISER Defendants, and each of them, and specifically PHILIPSON, DUBYAK, KILGORE  negligently misdiagnosed, mis-assessed, and/or mis-evaluated PLAINTIFF having mental illness and an unfit parent for the purpose of removing and separating PLAITNTIFF's children from her care and custody.  Defendants, and each of them concluded that PLAINTIFF exhibits signs of mental health condition by inexplicably alleged that there is a family history of mental illness.  When in fact, Defendants, and each of them, do not have complete medical facts and foundation of PLAINTIFF's family members and the alleged mental illness.  It was reasonably foreseeable that Defendants' negligent acts and/or omission would cause PLAINTIFF to experience severe emotional distress. As a result , PLAINTIFF did and continue to suffer severe emotional distress, all to an extent and in amount subject to proof at trial.

199.    Individual HBCSD and JOSEPH PERRY Defendants, and each of them, negligently misdiagnosed, mis-assessed, and/or mis-evaluated PLAINTIFF having mental illness and an unfit parent, and recommended the separation of PLAINTIFF's children from her care and custody.  Defendants, and each of them, knew that Defendants made

said conclusions and findings based solely and/or relied upon incomplete inaccurate RECORDS and/or data. It was reasonably foreseeable that Defendants, and each of them negligent acts and/or omission and recommendations would cause PLAINTIFF to experience severe emotional distress. As a result , PLAINTIFF did and continue to suffer severe emotional distress, all to an extent and in amount subject to proof at trial.

200.    GREENZANG negligently misdiagnosed, mis-assessed, and/or mis-evaluated PLAINTIFF having mental illness and an unfit parent, prescribed PLAINTIFF psycho tropic medication, and recommended the separation of PLAINTIFF's children from her care and custody. GREENZANG knew that his conclusions and findings based solely and/or relied upon incomplete inaccurate RECORDS and/or data. It was reasonably foreseeable that GREENZANG's negligent acts and/or omission and recommendations would cause PLAINTIFF to experience severe emotional distress. As a result, PLAINTIFF did and continue to suffer severe emotional distress, all to an extent and in amount subject to proof at trial.

201.    HONG NGUYEN negligently provided ineffective assistance of counsel and brought PLAITNIFF into and/or under the broad discretion control and exercise over the very life of PLAINTIFF and with her children by OC SSA and related parties. It was reasonably foreseeable that HONG NGUYEN's ineffective assistance of counsel would cause PLAINTIFF to experience severe emotional distress. As a result , PLAINTIFF did and continue to suffer severe emotional distress, all to an extent and in amount subject to proof at trial.

202. Defendants, and each of them, negligent conduct and behavior, acts and/or omission, was a substantial factor in the severe emotional injuries that PLAINTIFF suffered, and will continue to suffer, all to an extent and in an amount subject to proof at trial.

## Claim 10.  Declaratory Relief

### By PLAINTIFF Against COUNTY OF ORANGE, OC SSA, HONG NGUYEN, and DOES 1 through 10, Inclusive

203.    PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

forth in full, each of the foregoing paragraphs.

204.   As stated herein, Defendants, and each them, have wrongfully, unlawfully, and with deliberate indifference to the rights of PLAINTIFF, and with utter disregard of Defendants' duties and obligations to PLANTIFF's, acted, practiced and/or adopted policies, practices, procedures and/or customs which are in violation of the rights of PLAITNIFF, including those ot be free from governmental interference as to their familial associations and from unreasonable searches or seizures, including those relating to child abuse allegations and related actions and proceedings.

205.   Defendants have failed to acknowledge their improper, unlawful and unconstitutional actions, conduct and policies at the time of the incidents at issue in the present action, and PLAITNIFF is informed and believes, and on that basis allege, that presently  Defendants have not changed or modified such actions, conduct and/or policies to conform to law.

206.   Defendants wrongful and unlawful conduct, actions and/or policies, unless and until enjoined and restrained by order of this court, will cause, and continue to cause, great and irreparable injury to PLAINTIFF, and other individuals and citizens, in that Defendants will continue to act in accordance with said unlawful policies, and with deliberate indifference to their duties and obligations under state and federal law, including those under the Fourth and Fourteenth amendments as alleged herein above.

207.   PLAINTIFF has no adequate remedy at law to prevent or prohibit Defendants from continuing, and/or repeating, their unlawful and unconstitutional conduct and policies other than through injunctive relief, and therefore seek an order enjoining and prohibiting Defendants from, but not limited to as properly discussed above in details under *Monell-Related* claim ¶ 121-131.

## Claim 11.  Injunctive Relief

**By Plaintiff Against COUNTY OF ORANGE, OC SSA, JOSEPH PERRY, THEODORE R. GREENZANG, HONG NGUYEN and DOES 1 through 10, Inclusive**

208.    PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

209.    PLAINTIFF seeks a preliminary and Permanent Injunction against the above Defendants, and to maintain the status quo.

210.    PLAINTIFF can show a likelihood that she will be prospectively harmed in the future if the injunction is not granted.

211.    PLAINTIFF can show a likelihood that she will prevail on the merits of the injunction.

## PRAYER FOR RELIEF

**WHEREFORE,** PLAINTIFF Diem T Nguyen prays for judgment against Defendants, as to all causes of actions, as follows:

1. General damages and special damages according to proof;

2. Punitive damages as against the Individually named Defendants only;

3. Attorney's fees pursuant to 42 U.S.C. §1988, and any other appropriate statue;

4. Damages authorized by 42 U.S.C. §1988;

5. Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);

6. For a declaration of rights;

7. Costs of suit incurred herein; and

8. Such further relief as the Court deems just and proper.

Dated: May 23, 2017

Diem T. Nguyen
Plaintiff in Propria Persona

## DEMAND FOR JURY TRIAL

The PLAINTIFF hereby demands a trial by jury on all of the above causes of action to which there is an entitlement to a jury trial under the California and United States Constitutions.

Dated: May 23, 2017

Diem T. Nguyen
Plaintiff in Propria Persona

---

- 58 -
COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

## KAISER ARBITRATION is not required here

1. Kaiser is NOT licensed in accordance with the Knox-Keene Health Care Service Plan Act of 1975, as amended, Health & Safety Code Section 1340 et seq., and that Kaiser is a health care service plan that arranges for and facilitates the provision of health services for employer groups with which they contract;

2. Violation of the California Health and Safety Code Section 1363.1;

3. The subject arbitration agreement was not governed by the Federal Arbitration Act. Please see Health & Safety Code Section 1363.1;

4. Violation of the California Code of Civil Procedure Section 1295(a);

5. Violation of the California Health and Safety Code Section 1361.3(c);

6. This case involved third-party co-defendants not parties to the arbitration agreement pursuant to California Code of Civil Procedure Section 1281.2(c) due to the risk of conflicting rulings on a common issues of law or fact.

Accordingly, where so much uncertainty as to the enforceability of an arbitration agreement exists, fairness and common sense suggest that the arbitration is not required here. Constitutional rights should not be so easily disregarded especially here where the alleged waiver of those rights is supported by the controverted "KAISER" arbitration system that the alleged constitutional waiver was made knowingly, voluntarily, legally and intelligently, if at all.

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF